(No. 22244.—

THE PEOPLE *ex rel.* Otto Kerner, Attorney General, *et al.*
Appellants, *vs.* FRED HULS, Appellee.

*Opinion filed February 23, 1934.*

OTTO KERNER, Attorney General, and LOUIS L. IRWIN, State's Attorney, (O'HARRA, O'HARRA & ROETH, of counsel,) for appellants.

JOHN W. WILLIAMS, and CLYDE P. JOHNSON, for appellee.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The Department of Agriculture of this State and the People of the State of Illinois, on the relation of the Attorney General and State's attorney of Hancock county, filed their amended bill in equity in the Hancock circuit court against the defendant to restrain and enjoin him from refusing to submit his dairy and breeding cattle to a tuberculin test and from interfering in any manner with the Department of Agriculture and its duly accredited and authorized agents in making a tuberculin test of such cattle. To the amended bill the defendant interposed his demurrer. The grounds assigned in support of the demurrer, while numerous, may be grouped under the following general divisions: That the circuit court did not have jurisdiction of the case as presented by the amended bill; that the complainant had a full, complete and adequate remedy at law; that the statute relating to the eradication of bovine tuberculosis, under which the amended bill was filed, is violative of the State and Federal constitutions and is not enforcible. The trial court sustained the demurrer and entered a decree dismissing the amended bill for want of equity. From that decree this appeal is prosecuted.

The amended bill, amongst other things, charges that the defendant is a resident of Hancock county and is the owner of dairy and breeding cattle which are on his farm within such county; that the Department of Agriculture, (hereinafter referred to as the Department,) pursuant to the obligations imposed upon it by an act of the General Assembly entitled, "An act in relation to the eradication

of bovine tuberculosis and to repeal certain acts therein named," approved June 25, 1929, and in force July 1, 1929, has been, and is, engaged in making tuberculin tests of dairy and breeding cattle in large numbers and herds in this State; that the owners of a majority of the dairy and breeding cattle in Hancock county, as well as in the greater portion of the State, have submitted their cattle for tuberculin tests and that the same have been tested; that it is of the utmost importance to the health and welfare of the people of the State that all such cattle have a tuberculin test; that the work of the Department along this line of endeavor in the interest of the public health, and the expenses incurred in connection therewith, will in a large and serious manner be affected if and when other herds of dairy and breeding cattle within said county and State are permitted to go without a tuberculin test; that while such statute provides a penalty for the violation of the act, such penalty is wholly inadequate in the present case; that demand has been made by a duly accredited veterinarian and agent of the Department upon the defendant that he submit his cattle for a tuberculin test; that he refused to permit not only such accredited veterinarian but any and all accredited veterinarians under the Department to make such test; that he was informed, prior to the making of such attempt to test his cattle, that the Department would pay the direct expense of making such test; that in making such refusal on his part the defendant used such vigorous and forceful language as to indicate that for the Department to undertake to make such test would probably result in a breach of the peace; that the attitude and statements of the defendant indicated that he would, if required to pay the penalty for a violation of the act, pay the same and still refuse to permit the Department to make such test; that successive prosecutions would not, therefore, give the health of the general public the protection intended by the legislature in enacting such law; that Hancock county is

not, and was not at the time of the making of such several requests upon the defendant, under the "county area plan" as provided by said legislative act, of which fact the defendant then and there had notice.

At this term, in the case of *People* v. *Anderson*, (*ante*, p. 289,) we held that the Tuberculosis act is not in violation of the State or Federal constitution. No materially different grounds are assigned against the constitutionality of the act at bar than were urged in the *Anderson case*, *supra*. We have reviewed the authorities cited by the defendant in his brief attacking the constitutionality of the act and the arguments in support thereof. However, we are still of the opinion that the decision in the *Anderson case* is correct, and we adhere to the conclusions reached by us in that case that the act is constitutional.

The appellee argues that the act is indefinite and uncertain by the use of the verb "submit," in that part of section 2 of the act which requires that the owners "shall submit their cattle for a tuberculin test upon the request of the Department of Agriculture." The word "submit," taken in connection with the context of that portion of the act where it is used, has a well defined meaning generally understood by English-speaking people. "Submit—to present for determination." (Black's Law Dict. 3d ed.) The legislature is not required to define the meaning of English words in common and daily use. *People* v. *Lloyd*, 304 Ill. 23.

We will take up the two remaining questions together. Tuberculosis is a dangerous, deadly disease, infectious and communicable. It has long been recognized as one of the most insidious and fatal maladies affecting both the human race and cattle. It is a menace to society. It may be communicated to the human individual by means of food products from animals suffering from such disease. (*People* v. *Anderson, supra; Schulte* v. *Fitch*, 162 Minn. 184, 202 N. W. 719; *City of New Orleans* v. *Charouleau*, 121

La. 890, 46 So. 911.) The prevalence of tuberculosis in dairy cattle is a menace to the public health of both adults and children. (*State* v. *Splittgerber,* 229 N. W. (Neb.) 332.) The legislature, in the exercise of the police power, may enact such laws as in its judgment are reasonably necessary for the protection of the public health, (*People* v. *Robertson,* 302 Ill. 422; *People* v. *Witte,* 315 id. 282,) and in the exercise of such power it has the right to require the owners of dairy cows and breeding cattle to submit such animals to the tuberculin test. (*People* v. *Anderson, supra,* and cases cited.) Cattle which are infected with a dangerous, communicable or infectious disease are public nuisances at common law. (*People* v. *Anderson, supra; Durand* v. *Dyson,* 271 Ill. 382.) The jurisdiction of courts of equity to restrain the maintenance of public nuisances is of ancient origin and has been traced back as far as the reign of Queen Elizabeth. The jurisdiction is applicable not alone to public nuisances, strictly speaking, but also to purprestures upon public rights or property. (2 Story's Eq. Jur. (13th ed.) sec. 921.) The ground of the jurisdiction of courts of equity in cases of public nuisances is their ability to give a more complete and perfect remedy than is attainable at law in order to prevent irreparable mischief and also to suppress oppressive and vexatious litigation. (2 Story's Eq. Jur. sec. 923.) The demurrer conceded the truth of the facts appropriately stated in the amended bill. The act of the defendant in interfering with the accredited representatives of the Department in its efforts to make the tuberculin tests of his cattle and the enforcement of the law enacted for the purpose of suppressing and eradicating a disease dangerous to the human family constituted a public nuisance. *Jansen Farms* v. *City of Indianapolis,* 171 N. E. (Ind.) 199; *Board of Health* v. *Vink,* 184 Mich. 688, 151 N. W. 672; *State* v. *Canty,* 207 Mo. 439, 13 Ann. Cas. 787.

While it is a general rule of law that where the acts complained of constitute a breach of the criminal law, courts of equity will not for that reason, alone, take jurisdiction to enjoin the further continuance or prevention of threatened illegal acts, yet where the enforcement of the criminal law is merely incidental to the general relief sought and the acts complained against constitute a nuisance or danger to the public health and public welfare and a more complete remedy is afforded by injunction than by criminal prosecution, a court of equity will, on the request of the duly constituted authority, grant the relief sought by injunction. *Stead* v. *Fortner,* 255 Ill. 468; *People* v. *Smith,* 275 id. 256; *People* v. *Clark,* 268 id. 156; *Barrett* v. *Mt. Greenwood Cemetery Ass'n,* 159 id. 385; *People* v. *City of St. Louis,* 5 Gilm. 351; *German Alliance Ins. Co.* v. *Kansas,* 233 U. S. 389; *In re Debs,* 158 id. 564, 39 L. ed. 1092; *Columbian Athletic Club* v. *State,* 143 Ind. 98; High on Injunctions, (4th ed.) sec. 752, p. 716; 32 Corpus Juris, sec. 442, p. 279.

"The maintenance of the public health, morals, safety and welfare is on a plane above mere pecuniary damage although not susceptible of measurement in money, and to say that a court of equity may not enjoin a public nuisance because property rights are not involved would be to say that the State is unable to enforce the law or protect its citizens from public wrongs." (*Stead* v. *Fortner, supra.*) This court has never regarded a criminal prosecution which cannot prevent the continuance of a nuisance as a complete and adequate remedy for a wrong inflicted on the people. Nor does the fact that the violation of the injunction might subject the person to punishment for contempt deprive him of the right of trial by jury. (*In re Debs, supra.*) The suit is not a criminal action nor is it a civil action in which a jury can properly be demanded, and it does not deprive the defendant of a right of trial by jury. *Jansen Farms* v. *City of Indianapolis, supra.*

It has been expressly held that a court of equity has jurisdiction to restrain by injunction a cattle owner from interfering with and preventing the agents of the Department of Agriculture from entering upon the premises of the cattle owner, examining and testing his cattle for bovine tuberculosis and carrying out the law of the State and the rules and regulations of the Department of Agriculture in reference to bovine eradication. (*State* v. *Heldt*, 115 Neb. 435, 213 N. W. 578; *State* v. *Splittgerber, supra; State* v. *Wallace*, 117 Neb. 558, 221 N. W. 712; *State* v. *Kistler*, 119 id. 89, 227 N. W. 319.) It is apparent from the allegations of the bill that the defendant has determined that he will by all means within his power, even by resorting to force if in his judgment it is necessary, thwart the enforcement of this health measure as to his cattle. In that situation the imposition of the penalty provided by the act would be unavailing. The danger to the public health would still exist and the people of the commonwealth would continue to be exposed to danger. The rebellion of the defendant against the constituted authorities of the State, in their endeavor to enforce this health measure would be an encouragement to others to do likewise. The arm of a court of equity is available in such situation for the protection and defense of the people. From the allegations of the amended bill admitted by the demurrer, and taking into consideration the elements of public health and safety disclosed by the amended bill, we are of the opinion that a prosecution under the Criminal Code in the case at bar would not give the people a full, adequate and complete remedy and that a court of equity should take cognizance of the case.

The decree of the circuit court is reversed and the cause is remanded, with directions to overrule the demurrer to the amended bill.

*Reversed and remanded, with directions.*