THE CITY OF NORTH CHICAGO, Plaintiff-Appellee, *v.* ARCHIE PIXLEY *et al.,* Defendant-Appellant.

(No. 75-33;

Second District (1st Division)—May 13, 1975.

Ori & Tepper, of Waukegan (Ivan L. Tepper, of counsel), for appellant.

Rosing & Carlson and Sullivan & Smith, both of Waukegan (William Rosing and Richard Smith, of counsel), for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The trial court entered a preliminary injunction prohibiting the defendant Wildfire and its employees from providing live entertainment in the form of topless and/or bottomless nude dancing in conjunction with the sale of alcoholic beverages in violation of an ordinance of the City of North Chicago, and subsequently refused to dissolve that injunction. The constitutionality of an identically worded ordinance was upheld by this court in *Cheetah Enterprises, Inc. v. County of Lake* (1974), 22 Ill. App.3d 306, 317 N.E.2d 129, leave to appeal denied, and the defendants *do not challenge the ordinance here.*

On appeal, the defendants contend (1) that the complaint and the motion for a preliminary injunction are both insufficient in that they fail to allege facts constituting irreparable injury; (2) that the defendants should not have been enjoined because their acts were merely violations of a municipal ordinance; (3) that the injunction order is invalid because it fails to specify the reasons for its issuance; and (4) that the preliminary injunction should not have been issued because it grants the ultimate relief sought. We conclude that, insofar as this case is concerned, these contentions are without merit and affirm.

Wildfire, Inc., is a corporation engaged in the business of selling alcoholic liquor and furnishing live entertainment in the City of North Chicago, which, in September of 1974, enacted an ordinance which, *inter alia,* prohibits nude dancing in connection with the sale of such beverages.

In January of 1975, the City filed a complaint, sworn to by its mayor, setting out the foregoing and alleging also that the defendant Pixley manages the business and that Dardanes is manager or president; that, in December, 1974, with full knowledge of said ordinance, the defendants began to provide topless and/or bottomless nude dancing as entertainment for customers in connection with the sale of alcoholic liquor, in violation of said ordinance; that seven arrests of the defendants or their employees for such violations were made between December, 1974, and January 9, 1975; that the defendants have informed the City that they intend to continue to serve liquor and to provide nude entertainment for their customers; that said continued violation is detrimental to the health, safety, welfare and morals of the people of North Chicago and a threat to them; that courts of equity have the power to enjoin such acts; and that the City has no adequate remedy at law. The complaint sought a temporary restraining order and a permanent injunction forbidding the defendants from providing topless and/or bottomless nude dancing in connection with the sale of alcoholic liquors.

The said complaint and summons were served on all three defendants that same day, together with a notice motion that the City would on the following day, January 10, 1975, appear before the motion judge and move for a temporary injunction, and a copy of said motion. On January 10, 1975, all three defendants appeared by Julius Lucius Eckels and Carolyn Jaffe, and a preliminary injunction was issued

> "restraining the defendants, their attorneys, agents and assigns, from providing live entertainment in the form of topless and/or bottomless dancers on the premises operated by WILDFIRE, INC., in the City of North Chicago, in conjunction with the gift or sale of alcoholic beverages until final disposition of the case."

On January 17, 1975, the defendants moved to vacate said injunction on the grounds (1) that there was no allegation of irreparable harm to the plaintiff and (2) that bond ought not to have been waived. A motion was also filed to dismiss the complaint "for the reason that it does not state a proper cause of action and it seeks a remedy not permissible under the law," coupled with an answer to the complaint. Said answer admitted most of the preliminary allegations including the enactment of the ordinance, but asserted that it was unconstitutional and denied the rest of the allegations.

On January 20, 1975, attorneys Ori & Tepper appeared for the defendants and were given leave to withdraw the motion to dismiss and answer theretofore filed and to replead in 3 days. The case was set for January 24, 1975, before Judge Doran.

On January 22, 1975, the defendants filed a long (7 full pages), ram-

bling motion to dissolve which was really a brief, replete with arguments and citations, and an answer to the complaint, not perceivably different from that originally filed.

On January 24, 1975, the cause came on to be heard on the defendant's motion to dissolve the temporary injunction entered on January 10, 1975, and to stay said injunction, both of which motions were argued and denied. The appeal now before us is from the preliminary injunction of January 10, 1975, and the order of January 24, 1975, refusing to dissolve it.

This brings us to the defendant's *first* contention (their Points I and II) that the complaint and the motion for the preliminary injunction are both insufficient in that they do not allege facts constituting irreparable injury.

■■ While it is quite true that where a private person seeks an injunction he must allege facts constituting irreparable injury (*Knuppel v. Adams* (1973), 12 Ill.App.3d 708, 298 N.E.2d 767), this is not and never had been the law where a public law enforcement officer, on behalf of a State, or county or city, seeks to enjoin a public nuisance. Almost all of the cases cited by the defendant involved individual plaintiffs and in those that did not the issuance of the injunction was upheld.

A rather similar factual situation was before the court in *City of Aurora v. Warner Bros. Pictures Distributing Corp.* (1958), 16 Ill.App.2d 273, 147 N.E.2d 694. There the defendant was showing a movie entitled "Baby Doll" in violation of a city ordinance banning indecent or lewd pictures, and the City sought and obtained a temporary injunction against its further showing. In affirming the issuance of the temporary injunction, the court, at pages 281-284, said:

> "Defendants also contend that the amended complaint shows on its face that the court lacked jurisdiction of the subject matter because * * * the general powers of equity do not include the power to enjoin acts which are merely criminal or immoral, and unconnected with any threatened invasion of property rights. In *Stead v. Fortner*, 255 Ill. 468, cited by defendants, the court sustained an injunction issued at the suit of the Attorney General and the State's Attorney, enjoining the use of a building for the sale of liquor in Shelbyville, then anti-saloon territory. The court held that a court of equity has jurisdiction to abate a public nuisance even though the offenders are amenable to the criminal law and no property rights are involved. At page 477 the court said: 'This court has never regarded a criminal prosecution, which can only dispose of an existing nuisance and cannot prevent a renewal of the nuisance, for which a new prosecution must be brought, as a

complete and adequate remedy for a wrong inflicted upon the public. The public authorities have a right to institute the suit where the public welfare demands it and damages to the public are not susceptible of computation. The maintenance of the public health, morals, safety and welfare is on a plane above mere pecuniary damage although not susceptible of measurement in money, and to say that a court of equity may not enjoin a public nuisance because property rights are not involved, would be to say that a state is unable to enforce the law or protect its citizens from public wrongs * * *.'

* * *

*City of Sterling v. Speroni*, 336 Ill.App. 556, involved an injunction enjoining the operation of a bookie joint in the basement of the Galt Hotel in Sterling. On appeal it was contended that equity will not interfere with matters which are simply criminal or immoral unless the operation of such a place interferes with property rights. This court sustained the injunction and said: 'The only effective means of abating a nuisance of the character of the one shown by the evidence found in this record and to silence this bookie joint is by the strong and far reaching use of the equitable powers of the trial court.'

* * *

In our opinion courts of equity in Illinois have power to enjoin criminal or immoral acts even though the offenders are amenable to prosecution and no property rights are involved, in order to protect citizens from public wrongs and to protect the public health and welfare."

See also *City of Sterling v. Speroni* (1949), 336 Ill.App. 590, 84 N.E.2d 667, above cited and quoted from; *Stead v. Fortner* (1912), 255 Ill. 468, 99 N.E. 680, also above cited and quoted from; and *City of Chicago v. Larson* (1961), 31 Ill.App.2d 450, 454, 176 N.E.2d 675. Also 29 I.L.P. *Nuisances* § 34 (1957); 58 Am.Jur.2d *Nuisances* § 142 (1971); 43 Chicago-Kent Law Review 173, 183, 189 (1966).

■■ We therefore conclude that the defendants' first contention—that the complaint and motion for a temporary injunction are both insufficient in that they do not allege facts constituting irreparable injury—is without merit.

The defendants' *second* contention is that the defendants should not have been enjoined because their acts were merely violations of a municipal ordinance.

■■ Perhaps the best statement of the law in this regard is that found in *People ex rel. Kerner v. Huls* (1934), 355 Ill. 412, 189 N.E. 346, where,

in affirming the issuance of an injunction on the relation of the Attorney General and the State's attorney, our supreme court, at page 417, said:

"While it is a general rule of law that where the acts complained constitute a breach of the criminal law, courts of equity will not for that reason, alone, take jurisdiction to enjoin the further continuance or prevention of threatened illegal acts, yet where the enforcement of the criminal law is merely incidental to the general relief sought and the acts complained against constitute a nuisance or danger to the public health and public welfare and a more complete remedy is afforded by injunction than by criminal prosecution, a court of equity will, on the request of the duly constituted authority, grant the relief sought by injunction. *Stead v. Fortner*, 255 Ill. 468; *People v. Smith*, 275 id. 256; *People v. Clark*, 268 id. 156; *Barrett v. Mt. Greenwood Cemetery Ass'n*, 159 id. 385; *People v. City of St. Louis*, 5 Gilm. 351; *German Alliance Ins. Co. v. Kansas*, 233 U.S. 389; *In re Debs*, 158 id. 564, 39 L. ed. 1092; *Columbian Athletic Club v. State*, 143 Ind. 98; High on Injunctions, (4th ed.) sec. 752, p. 716; 32 Corpus Juris, sec. 442, p. 279."

In *Stead v. Fortner* (1912), 255 Ill. 468, 99 N.E. 680, above cited, in affirming the issuance of an injunction as against the contention that "a court of equity will not restrain the violation of public or penal statutes and will not administer the criminal laws of the State." Our supreme court, at page 475, said:

"The jurisdiction of courts of equity to enjoin nuisances is ancient and extends at least back to the reign of Queen Elizabeth, and in cases of public nuisances an indictment not only lies to abate them and punish the offenders, but an information also lies in equity to redress the grievance by way of injunction, on the ground that courts of equity have ability to give a more complete and perfect remedy, operating through future time, than is attainable by law. (Story's Eq. Jur.—13th ed.—secs. 921-924; Andrews on American Law, sec. 847.) It was very early recognized by this court that a court of equity may grant preventive relief where a threatened act would be a public nuisance, (*People v. City of St. Louis*, 5 Gilm. 351,) and that has always been the law in this State. It is a well recognized branch of equity jurisprudence to restrain, by injunction, public nuisances. (*Barrett v. Mt. Greenwood Cemetery Ass'n*, 159 Ill. 385.) The same rule is stated in 5 Pomeroy's Eq. Jur. sec. 479, Joyce on the Law of Nuisances, sec. 81, 21 Am. & Eng. Ency. of Law, (2d ed.) 705, and 29 Cyc. 1218. It is one of the most useful functions of a court of equity that it may give complete and adequate relief against acts which will constitute nui-

sances, and laws such as the one in question do not deny the equal protection of the laws. *Crowley v. Christenson*, 137 U.S. 86."

Another excellent statement is found in *People ex rel. Dyer v. Clark* (1915), 268 Ill. 156, 108 N.E. 994, where, in affirming an injunction, the court, at pages 161-162, said:

> "Plaintiff in error contends a court of equity has no jurisdiction to punish crime, and that is true if punishment of crime is the only object of the proceeding; but the rule is, that where a nuisance affects the public welfare it may be abated in equity on the application of the proper officer, and that a house of ill-fame may be or become a nuisance of that character. This is particularly true where the ordinary method of prosecution for the criminal offense proves ineffective. (9 Am. & Eng. Ency. of Law, — 2d ed. — 518; 14 Cyc. 484; 29 id. 1166; *Stead v. Fortner*, 255 Ill. 468; *Burnett v. Tedischi*, 154 Ala. 474; *Barrett v. Mt. Greenwood Cemetery Ass'n*, 159 Ill. 385.)"

See also *People ex rel. Thrasher v. Smith* (1916), 275 Ill. 256, 258, 114 N.E. 31; *Village of Spillertown v. Prewitt* (1961), 21 Ill.2d 228, 231, 171 N.E.2d 582; *City of Chicago v. Larson* (1961), 31 Ill.App.2d 450, 454, 176 N.E.2d 675; *City of Chicago v. Fritz* (1962), 36 Ill.App.2d 457, 465, 184 N.E.2d 713; *City of Girard v. Girard Egg Corp.* (1967), 87 Ill.App.2d 74, 76, 230 N.E.2d 294.

The legal commentators have reflected this same view. In 66 C.J.S. *Nuisances* § 110(e) (1950), it is said:

> "While, as discussed in Injunctions § 155, the mere violation of an ordinance is not sufficient to confer equitable jurisdiction, such violation, as considered supra § 9, may also constitute a nuisance, or an act in the nature thereof, in which case, if equitable grounds exist, equity may entertain jurisdiction to grant relief therefrom, not because the act is a violation of the ordinance, but because it is a nuisance."

See also 29 I.L.P. *Nuisances* § 51 (1957); 17 McQuillin, Municipal Corporations § 49.59 (1968); 58 Am.Jur.2d *Nuisances* §§ 142-143 (1971).

■■ We therefore conclude that the defendants' second contention—that the defendants should not have been enjoined because their acts were merely violations of a municipal ordinance—is without merit.

This brings us to the defendants' *third* contention—that the preliminary injunction here issued is invalid for failure to specify the reasons for its issuance.

Only one case is cited, *Hoda v. Hoda* (1970), 122 Ill.App.2d 283, 258 N.E.2d 386, where this court dissolved an injunction and reversed an

order refusing to dissolve it. The injunction there issued barred a husband, who had been married for some 34 years, from entering his own home and the court, at page 289, commented that the injunction order "did not set forth the reason for its issuance and was not specific in its terms."

■■ Such is not the case here where the acts enjoined, viz: topless and/or bottomless nude dancing in conjunction with the sale of alcoholic beverage, were, in themselves, a sufficient statement of the reasons for the injunction, and the command of the injunction was extremely specific and enjoined only those acts.

We therefore conclude that the defendants' third contention lacks merit.

This brings us to the defendants' *fourth* and last contention—that the preliminary injunction should not have been issued because it granted the ultimate relief sought.

Defendants cite only two cases. One is *Knuppel v. Adams* (1973), 12 Ill.App.3d 708, 298 N.E.2d 767, where this court reversed a temporary injunction in an election case, the effect of which injunction would, if left in effect, have forever barred the losing party from prosecuting an election contest. Thus, the "temporary" injunction there really would have ended the case. This is not at all the situation here, where the injunction could be dissolved and the acts resumed.

The second case cited, *House of Vision, Inc. v. Hiyane* (1965), 58 Ill. App.2d 431, 208 N.E.2d 390, was a case where an injunction, temporarily restraining the defendant from soliciting customers of his former employer, was *affirmed*. How this helps the defendant here utterly escapes us.

Actually, the rule is that such injunctions are quite proper.

In 66 C.J.S. *Nuisances* § 125 (1950), it is said:

> "§ 125. **Preliminary Injunction. In a proper case an injunction pendente lite may be issued in a suit to enjoin or abate a nuisance.**
>
> In a proper case a preliminary injunction may be issued pending the final determination. The granting of such an injunction ordinarily is a matter of sound judicial discretion."

■■ And in 17 McQuillin, on Municipal Corporations § 49.58, that:

> "* * * the possession for sale or distribution, as well as the actual sale or distribution, of pornographic literature, motion pictures, and other materials may be enjoined pending judicial determination of the obscenity of their content."

The cases are along this same line.

In *City of Aurora v. Warner Bros. Pictures Distributing Corp.* (1958),

16 Ill.App.2d 273, 147 N.E.2d 694, heretofore cited and discussed, the court, in affirming a temporary injunction barring the showing of a film entitled "Baby Doll," at page 285 said:

> "The law is well settled in Illinois that the trial court is vested with large discretionary power in granting an order for a temporary injunction and unless the reviewing court finds that the discretion has been abused the order will not be set aside. *Arends v. Naughton,* 11 Ill.App.2d 227, 236; *Bernard Bros., Inc. v. Deibler,* 326 Ill.App. 538, 542. Especially is this true where the temporary injunction issued after notice and a hearing and upon the giving of bond. *Shatz v. Paul,* 7 Ill.App.2d 223, 235."

In *City of Joliet v. Lohman* (1961), 32 Ill.App.2d 125, 177 N.E.2d 260, in affirming the issuance of a temporary injunction, this court, at page 131, said:

> "\* \* \* the showing on the pleading to obtain a temporary writ is less than that required to obtain a final permanent injunction. *Aurora v. Warner Bros. Pictures Dist. Corp.,* 16 Ill.App.2d 273, 147 N.E.2d 694."

■■ Another enlightening comment is found in *Consumers Digest, Inc. v. Consumer Magazine, Inc.* (1968), 92 Ill.App.2d 54, 235 N.E.2d 421, where, in affirming the issuance of such an injunction, the court, at page 61, said:

> "The defendants argue that the awarding of the temporary injunction determined controverted rights and granted plaintiff all the relief which could be obtained in a final decree. That argument is not tenable, since it is well recognized that the purpose of a temporary injunction is to protect the plaintiff by maintaining the parties in the same position they were in prior to the time when this dispute arose. It has been repeatedly stated that the granting or refusing of a temporary injunction is a matter resting in the sound discretion of the court."

See also *Simkins v. Maras* (1958), 17 Ill.App.2d 238, 250, 149 N.E.2d 430; *Weingart v. Weingart* (1959), 23 Ill.App.2d 154, 159, 161 N.E.2d 714.

We therefore conclude that the defendants' fourth and last contention—that the preliminary injunction should not have been issued because it granted the ultimate relief sought—is likewise without merit.

We therefore affirm the injunction order and the court's refusal to dissolve it.

Affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.