THE CITY OF HIGHLAND PARK, Plaintiff-Appellant, Cross-Appellee, *v.* THE COUNTY OF COOK *et al.*, Defendants-Appellees, Cross-Appellants.

Second District (1st Division)   No. 74-384

Opinion filed September 30, 1975.—Rehearing denied December 4, 1975.

16

SEIDENFELD, P. J., dissenting.

Thomas J. Compere, Berle L. Schwartz, and Richard J. Hollander, all of Highland Park, for appellant.

Bernard Carey, State's Attorney, of Chicago (Melvin Rieff and Sheldon Gardner, Assistant State's Attorneys, of counsel), for appellees.

Mr. JUSTICE HALLETT delivered the opinion of the court:

This action was filed in the Circuit Court of Lake County on November 6, 1974, by the City of Highland Park, seeking to enjoin the County of Cook and its Highway Superintendent from constructing a four-lane divided highway (replacing a two-lane single slab) in that portion of the right of way of Lake Cook Road (dividing Lake and Cook Counties) which lies within the corporate limits of the City.

The defendants filed a special appearance and moved to dismiss for want of jurisdiction or to transfer the case to Cook County, which motion was denied. They then moved to strike and dismiss the complaint on various grounds (want of jurisdiction, *res judicata* and failure to allege either irreparable injury or unlawful actions) and, when this was denied, answered the complaint.

On November 19, 1974, after a full evidentiary hearing, plus arguments, the trial court (1) enjoined the defendants, pending the final disposition of the case, from commencing any construction in Red Oak Lane and Ridge

Road (which are north of the right of way of Lake Cook Road); but (2) denied the City's motion for a preliminary injunction with respect to construction within the right of way of Lake Cook Road.

The City has appealed from the denial of its motion for a preliminary injunction as to improvements in Lake Cook Road, contending (1) that section 5—408 of the Highway Code (Ill. Rev. Stat. 1973, ch. 121, par. 5—408) requires a county to obtain the approval of a municipality of over 500 persons before constructing, altering or maintaining a highway within its corporate limits, which approval has not been obtained; and (2) that, under its "Home Rule" powers under the 1970 Constitution, it has the power to and did enact ordinances requiring such prior approval, which approval has not been obtained.

The defendants have cross-appealed from the denial of their various motions and the entry of the preliminary injunction against construction of outlets in Red Oak Lane and Ridge Road, contending (1) that the Circuit Court of Lake County has no jurisdiction over them; (2) that the matter is *res judicata* because of an earlier Federal Court judgment; and (3) that the complaint fails to state a cause of action in that it fails to allege either (a) irreparable injury or (b) that the acts done or threatened are illegal.

We reverse the injunction relating to the outlets in Red Oak Lane and Ridge Road, affirm the denial of the City's motion for an injunction as to improvements in Lake Cook Road and, concluding that further continuation of the litigation is unwarranted, dismiss the action without remandment.

The leading facts are not really in dispute. The plaintiff City of Highland Park has a population well in excess of 25,000 and is therefore a "Home Rule" municipality under the 1970 Constitution. It is situated in the south east corner of Lake County, immediately west of Lake Michigan. Lake Cook Road, established in the 1850's, runs east and west, dividing Lake and Cook Counties. For at least the past 30 years it has been a two-lane single pavement road, both sides constructed and maintained solely by Cook County, using State motor fuel tax funds, not county highway funds. There is no contention that the City ever maintained or improved it nor is it contended that it is not a county road. Cook County sets the speed limits but the City polices that part which lies within its limits, issuing citations and investigating accidents. The Lake County Highway Department has long taken the position that Cook County alone controls the entire right of way, both north and south of the county line. The City has a water main in the northern part and a sanitary sewer in the southern portion and in 1971 built a sidewalk on the north part of the right of way, east of the portion here involved.

In 1936 the County Board of Cook County adopted a resolution designating Lake Cook Road, from Waukegan Road to Greenbay Road, as a State Aid Road and this was received and approved by the State Department of Highways, this being designated as CH 101. When State motor fuel tax funds are used, the County Board adopts a resolution which has to be approved by the State Department before such funds can be used.

Prior to 1967 many municipalities and organizations had requested that Cook County widen Lake Cook Road and in that year the County Board adopted a resolution which was received and approved by the State Department. The proposed improvement was designed to alleviate traffic congestion, compounded by a railroad crossing to the east, and to reduce safety hazards. The plan called for a four-lane divided highway, to replace the present two-lane single pavement, which widening would cut the backup of vehicles by about half.

The project begins in Lake Cook Road, 124 feet east of the center line of Waukegan Road and continues east 8,777 feet to a point 220 feet west of the center line of Skokie Boulevard. All but 3,900 feet borders on the City limits. The project also contemplated improving the Red Oak Lane and Ridge Road outlets to the north of the present right of way in order to realign the street levels to accommodate a difference of some 2 feet (in some 30) between the new pavement and these older City streets to the north. Even as expanded, the improved highway will still lie some 20 feet south of the north edge of the right of way.

The Lake County Highway Department approved the project. In 1967 the Cook County Superintendent of Highways sent a set of the plans, as already approved by the Illinois Department of Highways, to Samuel Lawton, mayor of Highland Park, but no objections to this project were raised until the fall of 1972.* In the meanwhile, the County spent some $300,000 (of State fuel tax funds), on plans and specifications for the project, which estimated to cost some $2,000,000, one-half of which, or $1,000,000 will be expended in the area bordering the City. The entire project is being financed solely by State motor fuel tax funds, no county highway funds being employed.

In 1971 a regional shopping center development began in Northbrook immediately to the south of the project here involved, which will add thousands of vehicles daily to the congestion without adding to the City's revenues. The City has consistently opposed this and its position is reflected in its brief as appellee where it says:

---

* The City, by its Exhibits 9, 10, 11 and 12, attempted to establish that it had objected to this project (located on Lake Cook Road between Waukegan Road and Skokie Highway) before the fall of 1972, but these letters related only to another project to the east (between Edens Expressway and Green Bay Road).

"The conversion of the existing two-lane highway in Highland Park into a four and six lane highway immediately abutting the single family zoned and developed area on the north side of the highway in the City of Highland Park, *without providing a frontage road for the segregation and safety of the residents of the residential area from the huge volume of traffic which will be generated by the 145 acre shopping center now under construction immediately across the highway from such single family residential area,* results in irreparable damage, not only in its depreciating effect upon the taxable values of the houses in the area, but also to the safety of the children and residents in the area. * * *" (Emphasis ours.)

In March and December of 1973, the City adopted two ordinances (supposedly under the "Home Rule" power given it in the 1970 Constitution) which, in effect, require not only persons and corporations but "any unit of local government" other than itself to obtain the approval of the City Council before commencing any "installation, construction, reconstruction, repair or replacement of any road, way, thoroughfare, easement or place open to the use of the public for the primary purposes of vehicular traffic." The County did not seek or obtain any such approval.

In 1973 the City filed a suit in the Federal District Court, seeking to enjoin the County from proceeding with the project here involved on the ground that it violated the Federal Clean Air Act and the National Environmental Protection Act. Part of the suit was dismissed on motion and the rest by way of summary judgment in March of 1974.

In November of 1974, the City filed the instant suit in the Circuit Court of Lake County, seeking to enjoin the County and its highway commissioner from constructing the project above described and the trial court enjoined them, pending the disposition of this action, from constructing some outlets (Red Oak Lane and Ridge Road) to the north of Lake Cook Road but refused other relief. The City has appealed and the County has cross-appealed.

■■ Logically, we must *first* deal with the *County's* threshold contention—that the Circuit Court of Lake County has no jurisdiction over it or its Highway Commissioner, despite the fact that the real estate involved is in Lake County and that, after its initial motion to dismiss or transfer was denied, it moved to strike and dismiss on other grounds, and, when that was denied, answered the complaint.

The County relies heavily on two early (1847, 1869) Illinois cases (*Schuyler County v. Mercer County,* 9 Ill. 20; *McBane v. People,* 50 Ill. 503) handed down long before modern practice acts were enacted. And in those cases the defendant did not itself continue to participate in the

proceedings. We conclude that, under the facts of this case and under our present statutes and practice, the Circuit Court of Lake County had jurisdiction over the defendants and doubt that the contention merits further discussion.

We next pass to the defendants' *second* contention—that the City's action is barred by *res judicata* by virtue of its having previously filed and lost an action in the Federal District Court under the Federal Clean Air Act and the National Environmental Protection Act, where the court held that said Acts did not apply to the project here involved.

■■ We perceive no merit in this contention. Not only are the alleged causes of action completely different but the Federal Court had no jurisdiction to enter any judgment or decree against the defendants and so held. The trial judge properly disposed of this contention and we shall not discuss it further.

■■ This brings us to the County's *third* contention—that the complaint is insufficient in that it fails to allege irreparable injury as a necessary basis for a temporary injunction. While this is a sound theory where a private party is the plaintiff, it is not when a city or another public body brings the action, alleging violation of its ordinances and State statutes, with resulting damages to its residents. (See *City of North Chicago v. Pixley* (1975), 28 Ill. App. 3d 354, 328 N.E.2d 147, 148-52.) Hence, we conclude that this contention is without merit but we shall, for now, defer our treatment of the defendants' related contention that the complaint is insufficient in that it does not allege facts demonstrating that the defendants are doing or threatening to do anything illegal.

This brings us to the *City's first* contention—that section 5—408 of the Highway Code (Ill. Rev. Stat. 1973, ch. 121, par. 5—408) requires the County to obtain the City's approval before altering, constructing or maintaining a county highway within its corporate limits.

The Illinois Highway Code (Ill. Rev. Stat. 1969, ch. 121, pars. 1—101 through 11—107), provides a statewide system of highways, under the supervision and control of the Department of Public Works. In pertinent parts, it provides as follows:

"§1—102. Legislative Intent

It is the intent of the legislature to provide by this Code for the construction, maintenance and operation of public highways the end that the safety and convenience of highway traffic will be promoted and that the interests of the public relative to construction, maintenance and operation of public highways will be subserved thereby. It is the intent of the legislature to make the Department of Public Works and Buildings custodian of the State highway system and to provide sufficiently broad authority to enable the Department to function adequately and efficiently in all areas of appropriate jurisdiction, subject to the limitations of

the constitution and the legislative mandate hereinafter imposed. The legislature intends to declare, in general terms, the powers and duties of the Department, leaving specific details to be determined by reasonable rules and regulations which may be promulgated by it. It is the further intent of the legislature to bestow upon the counties, road districts and municipalities similar authority with respect to highways under their jurisdiction and to authorize the Department, counties, road districts and municipalities to assist and cooperate with each other and coordinate their activities.

❋  ❋  ❋

## DIVISION 1. GENERAL POWERS OF DEPARTMENT
"§4—101. Powers and duties of department

The Department shall have the powers and duties stated in Sections 4—101.1 to 4—101.14, inclusive:

❋  ❋  ❋

§4—101.1. General Supervision of Highways Constructed with State Funds

To have general supervision of highways to which this Code applies under the provisions of Section 1—103 heretofore or hereinafter constructed or thereafter maintained in whole or in part with State funds.

❋  ❋  ❋

§4—101.7 Approval of final plans, etc. of highways on which state funds may be expended.

To approve and determine the final plans, specifications and estimates for all highways to which this Code applies under the provisions of Section 1—103 on which State funds may be expended.

❋  ❋  ❋

§5—101. Powers and duties of county board.

The county board of each county shall have the powers and duties stated in Sections 5—101.1 to 5—101.9 inclusive.
§5—101.1 General supervision of county, township and district highways.

To have general supervision of all county, township and district highways in the county, subject to the provisions of Section 4—101.1.

❋  ❋  ❋

§5—101.3 Construction of county and state highways.

To construct any county highway, including the lighting thereof, in the discretion of the county board out of any funds available for such purpose, and to construct State highways, provided that any construction of a State highway shall be according to plans and specifications approved by the Department.

\* \* \*

§5—402. Department approval of highway construction or maintenance by county—mandatory—optional.

When motor fuel tax funds, federal aid road funds or other funds received from the State are used to finance, in whole or in part, the construction of a highway, or section thereof, by a county, supervision and approval of such project by the Department is mandatory and the county shall proceed in the manner set forth in Section 5—403.

Any county may construct a county highway, or section thereof, without supervision or approval of such project by the Department if no motor fuel tax funds, federal aid road funds or other funds received from the State are used to finance such construction. However, at the option of the county and by proceeding in the manner set forth in Section 5—403, any county highway construction project may be performed under the supervision of and approval by the Department even though no motor fuel tax funds, federal aid road funds or other funds received from the State are used to finance such construction.

§5—403. Construction of Highways under supervision of department—Procedure by county.

When any highway construction project by a County is to be performed under the supervision and approval of the Department the procedure shall be as follows:

The county board shall, by resolution, specify the particular section of highway to be constructed, the type of construction and the amount to be used for such construction. This resolution shall be submitted to the Department for its approval. When the resolution has been approved by the Department, the county shall cause surveys, plans, specifications and estimates of such construction to be made and submitted to the Department for approval.

Upon receiving such approval, the county may advertise for bids and let contracts for such construction to the lowest responsible bidder; or with the approval of the Department, do the work itself through its officers, agents and employees. No contract shall be let without the approval of the Department. The Department shall have general supervision of such construction whether done

by the county or by contract. Upon completion of the construction, if it is found by the Department that such construction has been in accordance with the specifications, plans, surveys, and contracts (if the construction was by contract), the Department shall so certify to the county.

\* \* \*

§5—405. County line highways.

County highways may be constructed or improved on county lines. In case two counties desire to secure the construction or improvement of a county highway situated upon or near the boundary line between them, the respective county boards thereof may, by appropriate resolutions, initiate proceedings therefor. To this end such county boards may, by concurring resolutions, fix the portion of the total cost of construction which should be borne by each county."

\* \* \*

§5—408. Construction of highways in municipalities.

The county board with the approval of the corporate authorities in the case of a municipality with a population of over 500, and in its own discretion in the case of a municipality with a population of 500 or less, may construct or maintain with county funds a highway or street, or part thereof, lying within the corporate limits of any municipality within the county, to connect or complete a county highway located to the corporate limits of such municipality." (This section as amended 1965, June 23, Laws of 1966, p. 1070, §1.)

It is the City's contention that the provision last above cited requires the County to have its approval before constructing or maintaining any highway within its corporate limits. We disagree.

The Illinois Highway Code, the pertinent parts of which are above set out, reflects a carefully stratified system of control over the designation, planning, construction and maintenance of the highways, roads and streets throughout the State. It specifies the respective responsibilities of the State, acting through its Department of Transportation, and each of the three levels of local government—counties, road districts and municipalities. It also spells out the relationships between these four levels of government, including the coordination of their actions so as to assure a systematic approach to the task of providing a workable system of highways and roads throughout the entire State.

■■ As these provisions reflect, it is the role of the counties, not the municipalities, to make decisions and enter into agreements with the State regarding the designation, planning, construction and repair of County Highways, and responsibility for the "County Highway System" is given

to the various County Boards. The "County Highway System" is defined to include all highways designated as County Highways. The other two levels of local government, including municipalities, are limited to dealing with highways and roads not included in the State or County Highway System.

Under the Code, the counties have the power to locate and extend County highways into and through municipalities, and they may designate existing streets as extensions of County highways.

The only part of the State public highway system over which municipalities have any jurisdiction is the "municipal street system," which is defined as streets in municipalities "which are not a part of the State highway system or a county highway system."

Any other result would produce chaos and to permit any municipality of over 500 persons to prevent an improvement to an existing county highway where, as here, it is being performed by a county with all necessary approvals from the State would violate and jeopardize the systematic structured approach to the designation, construction and maintenance of highways which is the foundation of the State Highway Code.

In the light of this structured State highway setup, let us consider the City's contention—that section 5—408 of the Illinois Highway Code requires the approval of any municipality of over 500 persons before a county may construct or maintain a highway in such municipality. Said section (Ill. Rev. Stat. 1965, ch. 121, par. 5—408) provides as follows:

"5—408. Construction of highways in municipalities.

The county board, with the approval of the corporate authorities in the case of a municipality with a population of over 500 and in its own discretion in the case of a municipality of 500 or less, may construct or maintain *with county funds* a highway or street, or part thereof, lying within the corporate limits of any municipality within the county, *to connect or complete a county highway located to the corporate limits of such municipality.*" (Emphasis ours.)

■■ We conclude that this section has no application to the facts in the case before us. In the first place, no highway is here being completed or connected, within the words of this section. Lake Cook Road has been there since about 1850 and has been maintained solely by Cook County for over 30 years. But, even more importantly, no "county funds" are being employed as is required by said section. The funds are State motor fuel tax funds, not County funds, and the entire project, including the very slight revision of two outlets to the north, has been approved by the State since 1967.

We therefore hold that the City's first contention—that section 5—408 of the Illinois Highway Code requires the County to have its approval be-

fore constructing or maintaining any highway within its corporate limits, which approval has not been obtained, is without merit.

This brings us to the *City's second* contention—that, under its "Home Rule" powers under the 1970 Constitution, it has the power to and did enact ordinances requiring such prior approval, which approval has not been obtained.

The constitutional provision involved is section 6(a) of article VII, which, in pertinent part, provides as follows:

> "* * * Except as limited by this Section, a home rule unit may exercise any power and perform any function *pertaining to its government and affairs* including, but not limited to the power to regulate for the protection of the public health, safety, morals and welfare * * *." (Emphasis ours.)

It seems obvious to us that this only expanded home rule units power over strictly local affairs, not those involving other municipalities or the county or State.

In the report of the Local Government Committee to the Constitutional Convention (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1622) it is said:

> "* * * The intent of * * * the Committee's proposal, is to give broad powers to deal with *local problems* to local authorities * * *." (Emphasis ours.)

In Froelich's article on "Home Rule" in the Illinois Municipal Law, ch. 24, §§24.12 and 24.81 (Ill. Inst. for Continuing Legal Education, November 1974), it is said:

> "A home rule unit may exercise any power and perform any function 'pertaining to its government and affairs.' The government and affairs language was clearly intended as a limit on home rule powers.
>
> "* * * Implicit in the words 'pertaining to its government and affairs' was the concept that matters of state concern or national concern are not within the ambit of the home rule power grant * * * many matters, even clearly of concern to home rule units, should be left to the determination of the General Assembly."

It seems obvious to us that the supposed "home rule" ordinances here involved, both adopted after the region shopping center accoss Lake Cook Road in Northbrook sprouted, were and are intended not for the City's own government and affairs, but those of other municipalities and the county and State.

These ordinances, in effect, require not only persons and corporation but "any unit of local government" other than itself, to obtain the approval of the City Council before commencing any "installation, construction, reconstruction, repair or replacement of any road, way, thorough-

fare, easement or place open to the use of the public for the primary purpose of vehicular traffic."

■■ If held valid and applied to the factual situation present in the case at bar, they are intended to and will affect the affairs of the County, the State and other municipalities and, in our opinion, therefore are not, as they must be, limited to the City's own affairs.

While there are, so far as we know, no Illinois cases as yet dealing with an attempt by a municipality to block a State approved county highway, there are decisions in other states. In *City of Lakewood v. Thormeyer* (1960), 171 Ohio St. 135, 12 Ohio. Op. 2d 162, 168 N.E.2d 289, the Supreme Court of Ohio rejected a municipality's challenge to the relocation and improvement of a highway by the State. The city contended that the project required its consent as a "home rule" unit but the court rejected this assertion on the ground that the project was "of more than local interest". To the same effect, see *State ex rel. Ohio Turnpike Com. v. Allen* (1952), 158 Ohio St. 168, 48 Ohio Op. 115, 107 N.E.2d 345.

■■ We therefore hold that the City's second contention—that, under its "Home Rule" powers under the 1970 Constitution, it has the power to and did enact ordinances requiring its approval before the County or any other "unit of local government" could construct, alter or maintain a highway within its corporate limits which approval has not been obtained, is without merit.

These conclusions are in themselves enough to bar the relief the City seeks, without going into the County's contention that the City is barred by its laches in sitting by from 1967 until the sprouting of a regional shopping center in 1971 caused it finally to oppose the widening of Lake Cook Road, which contention might have merit, were it needed.

This brings us to the County's final contention—that the complaint (or the evidence for that matter) fails to demonstrate that the County has acted or is threatening to act unlawfully in what it proposes to do in the widening of Lake Cook Road and the two small outlets to the north. As we have demonstrated, everything that the County has done or proposes to do has long since been fully approved by the State and is fully authorized under the Illinois Highway Code.

We can perceive no possible excuse for the further continuation of this action. We therefore (1) reverse the temporary injunction relating to the improvement of the outlets in Red Oak Lane and Ridge Road; (2) affirm the denial of an injunction as to the widening of Lake Cook Road; and (3) dismiss the action here, without remandment.

Affirmed in part, reversed in part, and dismissed without remandment.

GUILD, J., concurs.

Mr. PRESIDING JUSTICE SEIDENFELD, dissenting:

The majority concludes that the ordinances in question exceed the "pertaining to its government and affairs" limitation contained in section 6(a) of the home rule article. It bases this conclusion on its interpretation that the "pertaining to" language restricts home rule units' sphere of power to "strictly local affairs," which it then identifies as those subjects the regulation of which will have no effect upon any other governmental unit. With this interpretation I do not agree, and from it I respectfully dissent.

Section 6(c) of the home rule article gives priority to a municipal ordinance within its jurisdiction when it conflicts with a county ordinance. If a municipality's home rule power were restricted by section 6(a) to subjects strictly local in nature the regulation of which would have no extrajurisdictional effect, then the 6(c) priority section would be unnecessary. By including section 6(c), the drafters of the local government article realized that a subject within the ambit of both a county's and municipality's home rule concern might be validly regulated by both units and where regulatory conflict arose section 6(c) was intended as an answer.

A broader reading of the limitations of section 6(a) is also supported by section 6(i) which allows a home rule unit to share concurrent power over a subject with the State so long as there has been no State preemption[1] and the subject matter pertains to that home rule unit's government and affairs and not to problems particular to the State or nation. (7 Record of Proceedings, Sixth Illinois Constitutional Convention (Local Government Report) 1621.) Finally, section 6(m) states:

- "Powers and functions of home rule units shall be construed liberally."

Thus, the majority's analysis that the only subjects upon which a home rule unit may exercise its power are those strictly local problems the regulation of which will have no effect upon any other governmental unit is contradicted by the structure of the entire home rule section.

The question in this case then is do the ordinances regulate a subject which relates to the government and affairs of Highland Park, peripheral effect on other governmental units notwithstanding.

It is, in my mind, difficult to conceive of a subject which more pertains to Highland Park's government and affairs than the regulation of the construction and for maintenance of a county road which passes through its borders. City planning would effectively be burdened if such regulation were not allowed. Quiet, residential streets could at the unfettered discretion of the county home rule unit be transformed into major thoroughfares, thus causing unnecessary depreciation to property values and possibly creating unintended safety hazards to Highland Park residents.

---

[1] Preemption is not an issue in this case for the Illinois Highway Code was enacted prior to and not in anticipation of the 1970 Illinois Constitution. See, *e.g.*, *Peters v. City of Springfield*, 57 Ill. 2d 142, 147-49 (1974), and *Kanellos v. Cook County*, 53 Ill. 2d 161, 166-67 (1972).

The majority acknowledges that there are no Illinois cases which confront an attempt by a municipality to block a county highway from passage through its corporate borders. The majority does, however, cite two Ohio cases, *City of Lakewood v. Thormeyer*, 171 Ohio St. 135, 168 N.E.2d 289 (1960), and *State v. Allen*, 158 Ohio St. 168, 107 N.E.2d 345 (1952), which the opinion concludes dispose of the issue. In addition to the fact that these cases are out-of-state authority which carry little, if any, weight in interpreting our own home rule provisions,[2] these cases are distinguishable.

Municipal consent for the Ohio Turnpike was at issue in *Allen* while municipal consent for an interstate, or Federal aid primary highway was at issue in *Thormeyer*. These roads were of more statewide and national concern than the county road in the instant case.

In *City of Chicago v. Pollution Control Board*, 59 Ill. 2d 484 (1974), the supreme court rejected an argument by the Illinois Pollution Control Board and the Illinois Environmental Protection Agency that environmental and pollution matters did not pertain to the government and affairs of home rule units. 59 Ill. 2d 484, 486-89.

If pollution, with its extraterritorial effect and its comprehensive regulation by the State, may additionally be regulated at the municipal level, then the construction and maintenance of county roads within a municipality should likewise be subject to municipal regulation. As to the legal issue involved in this case I would uphold these ordinances.

---

[2] See Baum, *A Tentative Survey of Illinois Home Rule (Part I): Power and Limitations*, 1972 U Ill. L. F. 137, 157.