THE VILLAGE OF OAK BROOK *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF DU PAGE *et al.*, Defendants-Appellees.

Second District   No. 2—87—1217

Opinion filed August 18, 1988.

John H. Brechin, of Oak Brook, for appellant.


James E. Ryan, State's Attorney, of Wheaton (J. Patrick Jaeger and George J. Sotos, Assistant State's Attorneys, of counsel), for appellees.


JUSTICE DUNN delivered the opinion of the court:

Plaintiffs, the Village of Oak Brook (Village), the Midwest Club Trust and Kerry M. Krafthefer, appeal from an order denying plaintiffs' request for an injunction prohibiting the defendants, County of Du Page (County) and Karl Fry, from widening sections of two county highways located within the corporate limits of the municipality of Oak Brook. On appeal, plaintiffs contend the trial court erred in finding: (1) section 5—408 of the Illinois Highway Code (Ill. Rev. Stat. 1987, ch. 121, par. 5—408) inapplicable; (2) the County was not required to comply with local ordinance requirements concerning construction in a flood plain; and (3) the County appropriated sufficient funds for the road construction contract. We affirm.

On July 28, 1987, the Du Page county board approved a resolution for the construction of additional lanes on 31st Street and Meyers Road. These two county highways intersect in Oak Brook and are partially located within a flood plain area. The proposed construction within Oak Brook corporate limits is the subject matter of this litigation.

Plaintiffs' first amended complaint sought preliminary injunctive relief based on the contentions now urged on appeal. After a hearing and the submission of briefs in lieu of closing arguments, the court made the following findings. Preliminarily, the court treated the matter as a final resolution of the dispute between the parties; there was no objection by either party. The court then made the following pertinent findings of fact: (1) 31st Street and Meyers Road have been county highways since the 1940's; (2) Oak Brook has provided some maintenance (*e.g.*, grass cutting and snow removal) in agreement with

the County; (3) the County did not apply for Village approval of the project; (4) the conditions of an intergovernmental agreement between the parties concerning the widening of 31st Street and Meyers Road have been met or exceeded; (5) funds expended for the project include both motor fuel tax funds and county funds; (6) some of the roadway to be widened abuts upon land considered flood plain property under the Oak Brook ordinance regulating the use of lands located in flood plains; and (7) plans exist to develop two corners of 31st Street outside the Village with two hotels and commercial space.

The court made the following findings of law, which correspond to the three contentions raised by Oak Brook: (1) Oak Brook does not have the right to veto the proposed improvement or to insist that the County may not proceed without municipal approval; (2) the flood plain considerations of the Village are preempted by the responsibilities of the State and County and, therefore, the Village does not have the right to require the County to request a variance before it can improve a county highway going through a Village; and (3) regarding the appropriation of funds, even assuming the Village is a taxpayer and has standing, the exhibit relied on by plaintiffs was not an appropriation, but an explanation for improvements that were in fact contemplated.

■ Plaintiffs first contend the trial court erred in determining section 5—408 of the Illinois Highway Code was inapplicable to the County. Section 5—408 provides in relevant part:

"The county board, with the approval of the corporate authorities in the case of a municipality with a population of over 500, *** may construct or maintain with county funds a highway or street, or part thereof, lying within the corporate limits of any municipality within the county, to connect or complete a county highway located to the corporate limits of such municipality." (Ill. Rev. Stat. 1987, ch. 121, par. 5—408.)

In finding the County did not have to comply with section 5—408, the trial court stated this court's opinion in *City of Highland Park v. County of Cook* (1975), 37 Ill. App. 3d 15, 344 N.E.2d 665, standing alone, would require the court to deny the plaintiff relief under section 5—408. We agree.

In *Highland Park*, the city sought to enjoin the county from constructing a four-lane divided highway to replace an existing two-lane county highway within the city. The city's first contention was that section 5—408 required the county to obtain the city's approval before altering, constructing or maintaining a county highway within its corporate limits. After setting forth several provisions of the Illinois

Highway Code, the court stated:

"The Illinois Highway Code *** reflects a carefully stratified system of control over the designation, planning, construction and maintenance of the highways, roads and streets throughout the State. It specifies the respective responsibilities of the State, acting through its Department of Transportation, and each of the three levels of local government—counties, road districts and municipalities. It also spells out the relationships between these four levels of government, including the coordination of their actions so as to assure a systematic approach to the task of providing a workable system of highways and roads throughout the entire State.

As these provisions reflect, it is the role of the counties, not the municipalities, to make decisions and enter into agreements with the State regarding the designation, planning, construction and repair of County Highways, and responsibility for the 'County Highway System' is given to the various County Boards. The 'County Highway System' is defined to include all highways designated as County Highways. The other two levels of local government, including municipalities, are limited to dealing with highways and roads not included in the State or County Highway System.

Under the Code, the counties have the power to locate and extend County highways into and through municipalities, and they may designate existing streets as extensions of County highways.

The only part of the State public highway system over which municipalities have any jurisdiction is the 'municipal street system,' which is defined as streets in municipalities 'which are not a part of the State highway system or a county highway system.'

Any other result would produce chaos and to permit any municipality of over 500 persons to prevent an improvement to an existing county highway where, as here, it is being performed by a county with all necessary approvals from the State would violate and jeopardize the systematic structured approach to the designation, construction and maintenance of highways which is the foundation of the State Highway Code." (*Highland Park*, 37 Ill. App. 3d at 23-24, 344 N.E.2d at 671-72.)

The court then considered the application of section 5—408 in light of the structured State highway setup and concluded section 5—408 had

no application because: (1) no highway was being completed or connected in view of the fact the roadway in question had been in existence since 1850; and (2) no county funds were being employed as required by section 5—408. *Highland Park*, 37 Ill. App. 3d at 24, 344 N.E.2d at 672.

The applicability of section 5—408 was also addressed in *Rocke v. County of Cook* (1978), 60 Ill. App. 3d 874, 377 N.E.2d 287. There, the court confined its analysis to whether the road improvement would connect or complete a county highway so as to render section 5—408 operative. Relying on *Highland Park*, the court concluded section 5—408 was inapplicable and no prior approval by the local municipality was required for the planned improvements. *Rocke*, 60 Ill. App. 3d at 877, 377 N.E.2d at 290.

■ Here, the evidence supports the court's findings that 31st Street and Meyers Road have been county highways since the 1940's and will be improved, not connected or completed. Based on *Highland Park* and *Rocke*, these findings render inapplicable section 5—408. Consequently, there is no need to address plaintiffs' contention addressing the expenditure of county funds for expenses incurred prior to the commencement of construction.

■ Plaintiffs next contend a county seeking to improve a county highway must comply with village ordinances concerning construction in flood plain areas. As stated, the trial court determined flood plain considerations were preempted by the responsibilities of the State and County and, therefore, the County, having obtained a permit from State authorities, did not have to comply with the Village ordinance.

In our opinion, the analysis of the Highway Code in *Highland Park* is also dispositive of this issue. As pointed out in *Highland Park*, unless a county, which has secured the necessary approvals from the State, is given control over the construction of county highways, chaos will result. (*Highland Park*, 37 Ill. App. 3d at 24, 344 N.E.2d at 672.) This result seems inevitable if we were to conclude that the County, after securing a permit from the Illinois Department of Transportation and United States Army Corps of Engineers, would then have to comply with a comparable Village ordinance.

Section 5—402 of the Highway Code provides in relevant part:

"When motor fuel tax funds, federal aid road funds or other funds received from the State are used to finance, in whole or in part, the construction of a highway, or section thereof, by a county, supervision and approval of such project by the Department [of Transportation] is mandatory *** and the county shall proceed in the manner set forth in Section 5—403." (Ill. Rev.

Stat. 1987, ch. 121, par. 5—402.)

Section 5—403 provides in relevant part:

"When any highway construction projects by a County are to be performed under the supervision and approval of the Department the procedure shall be as follows:

The county board shall, by one or more resolutions, specify the particular section or sections of highway to be constructed and the amount or amounts to be used for such construction. The resolution or resolutions shall be submitted to the Department for its approval. *** When the resolution or resolutions have been approved by the Department, the county shall cause surveys, plans, specifications and estimates of such construction to be made and submitted to the Department for approval." (Ill. Rev. Stat. 1987, ch. 121, par. 5—403.)

Pertinent to the present case, the County applied to the Illinois Department of Transportation, Water Resources Division, and the United States Army Corps of Engineers, among others, for a permit to widen sections of 31st Street and Meyers Road. The location of the proposed improvements in a flood plain area was duly noted on the application. The Department of Transportation, in conjunction with the other agencies, issued the permit, apparently pursuant to section 18f of "An Act in relation to the regulation of rivers, lakes and streams of the State of Illinois," which provides in relevant part:

"The Department of Transportation shall define flood plains within the State of Illinois on a township by township basis and may issue permits for any construction within such flood plains ***. The Department shall publish and distribute suitable reports, together with mapping and hydrologic exhibits pertaining to flood plains defined and established under this Act. In defining applicable flood plains, the Department shall cooperate with, and shall consider planning and zoning requirements of, regional planning agencies created by statute, counties, municipalities and other units of government. A period of thirty days shall be allowed for any agency to submit written comments to the Department regarding any proposed flood plain area. If such agency fails to return comments to the Department within the specified time period the Department may proceed with the publication and institution of the flood plain permit procedure. The Department is charged with the planning, development and evaluation of the most economic combination of retention storage, channel improvement and flood plain preservation in defining and establishing flood plain areas. All construction under-

taken on a defined flood plain *** without benefit of a permit from the Department of Transportation, shall be unlawful and the Department, may in its discretion, proceed to obtain injunctive relief for abatement or removal of such unlawful construction." (Ill. Rev. Stat. 1987, ch. 19, par. 65f.)

It is apparent from the terms of the joint application for permission to construct within a flood plain and section 18f that extensive consideration was given to the County's request to widen 31st Street and Meyers Road by the State and Federal agencies involved.

Having obtained the required State and Federal approval, it is contrary to the rationale in *Highland Park* to then require the County to obtain a variance from a local municipality. This added burden would give the municipality veto power over a county highway project and thereby undermine the coordinated structure developed by the legislature. Because requiring compliance with the Village ordinance addressing construction in a flood plain violates the spirit of the Highway Code, we uphold the trial court's determination on this matter.

Plaintiffs assert Federal law mandates the Village regulate all construction and development within areas designated as flood plain or flood way. The Federal regulations relied on by plaintiffs provide that Federal flood plain insurance shall not be renewed unless the community has adopted adequate flood plain management regulations that take precedence over any less restrictive conflicting local laws, ordinances or codes. (44 C.F.R. §60.1 *et seq.* (1987).) A review of article X of the Village of Oak Brook Ordinances indicates the flood plain provisions were adopted in order to comply with Federal requirements involving flood plain insurance. Since the regulations remain in effect, the Village presumably will not lose its Federal flood plain insurance on account of our determination that a county, which has complied with State flood plain requirements, need not obtain a variance from the local municipality. (See *National Advertising Co. v. Village of Downers Grove* (1988), 166 Ill. App. 3d 58, 62, 519 N.E.2d 502, 504.) Further, there is no showing the State regulations are less restrictive than the Village ordinance requirements.

■ Plaintiffs lastly contend the construction contract awarded by the County is invalid because the County failed to appropriate sufficient funds for the contract in violation of section 4 of "An Act in relation to the budgets of counties not required by law to pass an annual appropriation bill," which provides in relevant part:

"[N]o contract shall be entered into and no obligation or expense shall be incurred by or on behalf of a county unless an

appropriation therefor has been previously made." (Ill. Rev. Stat. 1987, ch. 34, par. 2104.)

The 1987 Du Page County appropriation ordinance indicates that $8,800,000 was appropriated by the County from the motor fuel tax fund. An itemization of the road construction projects scheduled to be funded reveals that approximately $2,500,000 was dedicated to the 31st Street/Meyers Road project. The contract awarded by the County amounted to approximately $3,300,000.

George Kouba, director of finance for the County, testified the itemized schedule of proposed road construction expenditures represented estimated costs. Kouba added the schedule was not part of the appropriations ordinance, rather it was for informational purposes only.

The court concluded the itemized schedule relied on by plaintiffs was not, in fact, an appropriation; rather, it was an explanation for improvements that were, in fact, contemplated. The court's determination is supported by the testimony of George Kouba and stands to reason. There is no dispute the County appropriated $8,800,000 for road construction from the highway motor fuel tax fund. This amount far exceeds the amount of the contract awarded by the County for the project in issue in this case. The construction schedule comprises the estimated costs of various projects and is not a part of the appropriation ordinance. We are not persuaded an outlay for one project which falls within the total amount appropriated for road construction invalidates the contract. We note the resolution awarding the contract states that additional monies will be encumbered to complete the project.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

NASH and INGLIS, JJ., concur.