THE COUNTY OF LAKE, By and Through its Lake County Stormwater Management Commission, Plaintiff-Appellee, v. FOX WATERWAY AGENCY, Defendant-Appellant.

Second District   No. 2—00—1375

Opinion filed November 20, 2001.

Robert J. Long, of Daniels, Long & Pinsel, of Waukegan, and David W. McArdle and E. Regan Daniels Shepley, both of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellant.

Michael J. Waller, State's Attorney, and James C. Bakk, of Law Offices of James C. Bakk, both of Waukegan, for appellee.

JUSTICE RAPP delivered the opinion of the court:

Defendant, Fox Waterway Agency (FWA), appeals the denial of its motion for summary judgment and the grant of summary judgment for plaintiff, the County of Lake, by and through its Lake County Stormwater Management Commission. Defendant asserts that the trial court erred by finding that the Lake County Stormwater Management Commission (the Commission) has authority over a project that has been under defendant's control. Defendant argues that, since the project property is owned by the State of Illinois and because the property is not located in a designated floodway, the circuit court erred in finding that the Commission had the authority to require defendant to apply for and obtain a permit from the Commission. For reasons not directly asserted by the parties, we reverse summary judgment for plaintiff and grant summary judgment for defendant.

## I. FACTS

Grass Island is located in Grass Lake, which in turn is located within the Chain O Lakes in Lake County. Over the past 25 years, Grass Island has lost great amounts of its square area. In August 1999, defendant became engaged in "the geotube project," designed to rebuild the island. The geotube project involves the use of large fabric tubes into which dredge spoil from lake bottom sediment or materials is inserted. The tubes are laid end to end on top of each other, apparently in a square design, thereby creating an enclosure, into which additional dredge material is added. When enough material has been added to bring the area up to the specified grade levels, native vegetation is planted, and the area becomes a refuge for birds and plants. The defendant's plans specify that the island should reach an elevation of 738.50 feet. The floodplain elevation (or base flood elevation)

on Grass Lake, as designated by the Federal Emergency Management Agency (FEMA), is 741.8 feet. The normal summer water level on Grass Lake, as fixed and artificially maintained by the Illinois Department of Natural Resources (IDNR) by means of the use of locks and dams is 737.30 feet. Prior to beginning the project, defendant obtained permits from IDNR and the Chicago District of the United States Army Corps of Engineers (ACOE). Defendant did not apply for a permit from the Commission.

The Commission notified defendant several times of its failure to obtain a permit in violation of its watershed development ordinance (ordinance) (Lake County Watershed Development Ordinance art. IV, § 1 (eff. October 18, 1992)). These warnings culminated in a stop-work order issued to the defendant and the filing of a complaint in the circuit court of Lake County on June 7, 2000. Plaintiff sought a declaration that defendant must obtain a $340 permit from the Commission and asserted that the construction of the island with a portion above the water level of Grass Lake would displace floodplain water storage volume. Defendant admitted in its answer that the land will be above the mean summer normal water levels but denied that displacement would occur, because the water levels of Grass Lake are artificially controlled by the Algonquin Dam and the Stratton Lock and Dam, which are controlled by the IDNR and the ACOE. The parties submitted a joint statement of stipulated facts and filed cross-motions for summary judgment.

In its motion for summary judgment, plaintiff asserted that its authority to regulate defendant's activities arose from its agreement with the Illinois Department of Transportation (IDOT) and later, the IDNR, which took over IDOT's authority. This agreement delegated permit authority to the Commission in the 100-year floodway. Plaintiff also asserted that the Counties Code (55 ILCS 5/1—1001 et seq. (West 1998)) gave it the authority to regulate zoning and floodplains. Since the reconstructed Grass Island would be located 6 to 12 inches above the normal summer water level of 737.30 feet, plaintiff asserted that "a substantial number of acres of floodplain water volume will be displaced." Further, plaintiff argued that neither the IDNR's nor the ACOE's exemption for state projects applied to defendant and that both permits recognized the permittee's responsibility to obtain local approval. Plaintiff argued that, since both parties are units of local government, *Wilmette Park District v. Village of Wilmette*, 112 Ill. 2d 6 (1986), required that cooperation between them be given great emphasis, and in that spirit, its ordinance should be enforced against defendant.

In its own motion for summary judgment, defendant asserted

that, since the water in Grass Lake was artificially manipulated by the IDNR's control over a dam located on Grass Lake, the water could not fall below the FEMA's base floodplain elevation. Defendant argued that the project will not reach the floodplain base elevation, is not in the 100-year floodway and, thus, is outside the Commission's authority over a floodplain.

The trial court granted plaintiff's motion for summary judgment and denied defendant's. The court found that the part of the new island that would rise above the normal water level of Grass Lake was in the floodplain and that the Commission had jurisdiction over the geotube project through Lake County's ordinance. The court found no statutory exemption available to defendant and ordered defendant to apply for and obtain a permit. By agreement of the parties, the project was allowed to continue.

Defendant filed a motion for reconsideration, arguing that, in accordance with the court's order, it had forwarded the application for the permit to the IDNR for signature and that the IDNR had responded by asserting this was a state project and was not, therefore, subject to the Commission's permit process. Plaintiff argued in response that defendant's assertion that this was a state project conflicted with the joint statement-of-facts' provision that it was an FWA project. Plaintiff characterized this attempt as a "make over" and argued against defendant's motion on the basis that defendant had not offered any new evidence. The circuit court agreed that the defendant's motion for reconsideration raised no new evidence, but it ruled on the merits in order to do substantial justice to the parties. Finding that the evidence showed at best a "joint" project between the defendant and the state, the circuit court denied defendant's motion. Defendant filed a timely notice of appeal.

## II. DISCUSSION

■ Prior to addressing the merits, we first address the defendant's motion to supplement the record, which we took with the case. Defendant seeks to supplement the record on appeal with items that were available but not presented before the trial court, as well as with items that were not in existence at the time of the circuit court proceedings. Illinois Supreme Court Rule 329 (134 Ill. 2d R. 329) allows the record on appeal to be supplemented only with evidence actually before the trial court. *In re Estate of Albergo*, 275 Ill. App. 3d 439, 444 (1995). Therefore, the documents that were in existence but not presented to the circuit court may not be added to the record on appeal. *Albergo*, 275 Ill. App. 3d at 444. Similarly, evidence not in existence at the time of the lower court proceeding is outside the record

on appeal. See *Wilmette*, 112 Ill. 2d at 19 ("[T]o the extent that the proposed affidavit relates to events occurring after entry of the appellate court's decision, such events are obviously outside the record and the scope of this court's review on appeal"). Accordingly, defendant's motion to supplement the record on appeal is denied. We now turn to the merits.

■ Since both parties filed motions for summary judgment, only a question of law is raised, and our decision is based upon the record as a matter of law. *American Family Mutual Insurance Co. v. Chiczewski*, 298 Ill. App. 3d 1092, 1094 (1998). Thus the standard of review for the grant of plaintiff's motion for summary judgment and the denial of defendant's motion is *de novo*. *American Family Mutual Insurance Co.*, 298 Ill. App. 3d at 1094.

■ The Commission was created by resolution of the county board of Lake County, pursuant to the Counties Code (55 ILCS 5/1 *et seq.* (West 1998)), to develop a stormwater management plan for the county. 55 ILCS 5/5—1062(b) (West 1998). Section 5—1062(a) of the Counties Code seeks to set minimum standards for the management of floodplains and stormwater and to consolidate the framework into a uniform county system. 55 ILCS 5/5—1062(a) (West 1998). The section provides that the county board can:

> "prescribe by ordinance reasonable rules and regulations for floodplain management and for governing the location, width, course and release rate of all stormwater runoff channels, streams and basins in the county, in accordance with the adopted stormwater management plan." 55 ILCS 5/5—1062(f) (West 1998).

Another section of the Counties Code grants the county board the authority to "regulate and restrict the location and use of buildings, structures and land for trade, industry, residence and other uses" and "to establish building or setback lines on or along any street, trafficway, drive, parkway or storm or floodwater runoff channel or basin outside the limits of cities." 55 ILCS 5/5—12001 (West 1998). Pursuant to these sections, Lake County enacted the ordinance, which provides that for all development located in the regulatory floodplain:

> "No person, firm, corporation or governmental agency shall commence any development regulated by this Ordinance on any lot or parcel of land without first obtaining a Watershed Development Permit from the Stormwater Management Commission." Lake County Watershed Development Ordinance art. IV, § I (eff. October 18, 1992).

■ Despite the Commission's and Lake County's authority, which is granted by the enactments above, the Rivers, Lakes, and Streams Act (615 ILCS 5/4.9 *et seq.* (West 1998)) provides that the IDNR has

general supervision of every body of water within the State of Illinois (615 ILCS 5/7 (West 1998)) and grants the IDNR the authority to issue permits for construction in the designated "100-year floodway" (615 ILCS 5/18g (West 1998)). The statute provides, however, that the IDNR may delegate this permit-issuing authority to units of local government. 615 ILCS 5/18g (West 1998). The section defines "100-year floodway" as:

> "[T]he channel and that portion of the floodplain adjacent to a stream or watercourse which is needed to store and convey the 100-year frequency flood discharge without significant increase in stage." 615 ILCS 5/18g(d)(1) (West 1998).

Section 18(g) further recognizes the "concurrent exercise by any unit of local government of any power consistent herewith." 615 ILCS 5/18g(g) (West 1998).

█ Pursuant to section 18g(b) of the Rivers, Lakes, and Streams Act, the Commission entered into an agreement with the IDNR, under which the Commission received the authority to issue permits in the 100-year floodway. The grant of authority specifically exempted "permits for federal or state units of government."

We recognize the Commission's authority to be involved in activities that affect its management of stormwater and the prevention of floods. We also recognize that this may be a state project on state property. However, we need not decide whether the Commission's authority extends to a project of this type or, if it does, whether such authority would extend to a state project undertaken on what may be state property. We do not find the arguments to which the parties have addressed themselves in the circuit court and in their briefs to be the dispositive issues in this case. Rather, we must decide whether the plaintiff may assert authority to require the application and receipt of a permit from a statutorily created entity that possesses the statutory authority to engage in precisely the activities for which plaintiff seeks to require a permit. We hold that the specific duties and powers granted to defendant by the Fox Waterway Agency Act (Fox Waterway Act) (615 ILCS 90/1 et seq. (West 1998)) exempt the defendant from the Commission's permit requirement.

Defendant is a body corporate and politic, created by the Fox Waterway Act (615 ILCS 90/1.1 (West 1998)). Defendant's territory consists of several townships in both Lake and McHenry Counties. 615 ILCS 90/4 (West 1998). Defendant is granted the power and duty to:

> "implement reasonable programs and adopt necessary and reasonable ordinances and rules to improve and maintain the Chain O Lakes—Fox River recreational waterway *** to help prevent or

control flooding of the waterway, to improve recreational uses of the waterway, to prevent pollution and otherwise improve the quality of the waterway, [and] to promote tourism." 615 ILCS 90/7.1 (West 1998).

Defendant is charged with the responsibility of coordinating "efforts of State, federal and local governments to improve and maintain the waterway" (615 ILCS 90/7.1 (West 1998)). Defendant enjoys the statutory authority to "construct, acquire, improve and maintain public recreational facilities within its territory" (615 ILCS 90/7.4 (West 1998)) and to "acquire, purchase, lease, possess and control dredging equipment" (615 ILCS 90/7.5 (West 1998)).

The parties do not appear to dispute that the geotube project, seeking to restore the island and thereby create a habitat for nature, improves the quality of the waterway. Further, the powers granted to defendant by the Illinois General Assembly to construct facilities within the waterway, and to acquire the equipment necessary to do such a project, convince us that the project falls within the express statutory grant of authority to defendant. Accordingly, the Commission may not impose its own authority on defendant, even if that authority would otherwise be validly imposed upon state-owned property.

Although both parties cite authorities in support of their position, we find few cases directly on point. Few of the cases suggested by counsel or discovered in our research involve the regulation and control by one local unit of government over another that was statutorily created to engage in the activities the first seeks to regulate. However, because they provide appropriate principles applicable to our decision, we will examine those cases that raise similar issues.

We agree with defendant that there is an analogy between the facts raised here and those cases involving regulation and construction of highways. In *Village of Oak Brook v. County of Du Page*, 173 Ill. App. 3d 490 (1988), we allowed the county to widen two county roads without obtaining a city permit, despite the fact that the roads passed through a floodplain and the city had ordinances regarding such construction. *Village of Oak Brook*, 173 Ill. App. 3d at 494. This court held that, since the county had obtained a permit from the state, it did not need to comply with the village ordinance. *Village of Oak Brook* 173 Ill. App. 3d at 494. We noted that to require the county to comply with the village ordinance would be contrary to our prior decision in *City of Highland Park v. County of Cook*, 37 Ill. App. 3d 15 (1975), which held that the Illinois Highway Code (Ill. Rev. Stat. 1987, ch. 121, par. 5—402) granted the county primary authority to make decisions regarding county highways. *Village of Oak Brook*, 173 Ill. App.

3d at 496, citing *City of Highland Park*, 37 Ill. App. 3d at 23. We believe that these cases support the assertion that, where a legislative enactment grants primary jurisdiction over a particular matter to a body of government, a less-particular grant of authority given to an equal or lesser unit of government may not be exerted to require compliance with its mandates. The Commission enjoys authority to regulate activities affecting stormwater management, but defendant shares this authority (see 615 ILCS 90/7.7 (West 1998)) and, further, has been given more particular duties to do so under the Fox Waterway Act.

Plaintiff argues that *Wilmette Park District v. Village of Wilmette*, 112 Ill. 2d 6 (1986), controls the outcome. In *Wilmette*, the plaintiff park district filed suit seeking a declaration that the district was not subject to the village's zoning ordinance and did not need to apply for a special use permit in order to install new lights. *Wilmette*, 112 Ill. 2d at 10. The Illinois Supreme Court found no conflict between the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, par. 11—13—1) and the Park District Code (Ill. Rev. Stat. 1983, ch. 105, par. 1—1 *et seq.*) and decided that neither granted the park district immunity from a local zoning ordinance. *Wilmette*, 112 Ill. 2d at 14. The court dismissed the park district's argument that the legislature's grant of authority to operate its parks granted it immunity from the zoning requirements of its host municipality. *Wilmette*, 112 Ill. 2d at 14-15. The court stressed the need for cooperation between two bodies of local government when their interests and responsibilities were overlapping or in competition. *Wilmette*, 112 Ill. 2d at 17. The court noted that the host municipality's interest did not stem from a desire to "manage park land" but, rather, from its genuine interest in planning and regulating the land for the protection of nearby residents. *Wilmette*, 112 Ill. 2d at 18. Plaintiff argues that it and the defendant are both local governmental entities carrying out statutory duties and, as such, defendant should be required to submit to the permit process in order to achieve cooperation between the independent units of local government.

We agree that cooperation between two units of local government should be encouraged and sought whenever possible. However, we do not agree that these two agencies are necessarily equal. While plaintiff was created by a county board resolution (see 55 ILCS 5/5—1062 (West 1998)), defendant was created directly by state statute (615 ILCS 90/1.1 (West 1998)). See *Carver v. Nall*, 186 Ill. 2d 554, 561-67 (1999) (holding that the Illinois Administrative Procedure Act (5 ILCS 100/10—50(b) (West 1996)) did not apply to the Adams County sheriff's merit commission because it was, in fact, created by a county board and not the legislature, thereby making it an agency of the county and not the state).

Further, a park district is not created specifically to install new lights in parks, whereas defendant was created to help prevent or control flooding and improve the quality of the waters in the Chain O Lakes, including Grass Lake (615 ILCS 90/7.1 (West 1998)). The *Wilmette* court noted that the host municipality's interest did not stem from a desire to engage in those activities that the district was created to perform (management of park land) but, rather, from its zoning interests. *Wilmette*, 112 Ill. 2d at 18; see also *County of Lake v. Semmerling*, 195 Ill. App. 3d 93, 97-98 (1990) (noting that the zoning ordinance relating to floodwater management did not directly conflict with the city's duty to maintain and improve roads within its jurisdiction). However, plaintiff's asserted concern with the geotube project stems from a desire to engage in and control the same specific activities the defendant was created for and that defendant was given the express authority to perform.

We deal here with a conflict between plaintiff's ordinance and the Fox Waterway Act, and when two unequal legislative bodies have inconsistent enactments, the enactment of the more powerful body will preempt that of the lesser. *Lily Lake Road Defenders v. County of McHenry*, 156 Ill. 2d 1, 8 (1993). In *Lily Lake*, the supreme court held that the county possessed the authority to regulate by ordinance, reversing the trial court's holding that the Illinois Environmental Protection Act (the IEPA) (Ill. Rev. Stat. 1987, ch. 111½, par. 1001 *et seq.*) repealed the County Zoning Act of 1935 (the Zoning Act) (Ill. Rev. Stat. 1979, ch. 34, par. 3151 *et seq.*) by implication. *Lily Lake*, 156 Ill. 2d at 12. The court first found it was evident that the legislature did not intend to repeal the Zoning Act by implication when it enacted the IEPA. *Lily Lake*, 156 Ill. 2d at 9. Discussing precedent, the court opined:

> "[W]here a particular local *zoning ordinance* (as opposed to the legislature's Zoning Act) purportedly interfered with the legislative purpose of establishing a statewide environmental program, this court has held that the IEPA *preempted* the ordinance and rendered the ordinance unenforceable against a facility which had acquired a permit pursuant to the IEPA." (Emphasis in original.) *Lily Lake*, 156 Ill. 2d at 12.

Second, the court declined to determine whether the IEPA preempted the local ordinance because the IEPA specifically provided that the issuance of a permit did not exempt the permittee from compliance with any applicable local law. *Lily Lake*, 156 Ill. 2d at 13-14. Thus, the basis for the court's failure to find preemption was the specific statutory language requiring further compliance with local authorities. Conversely, the Rivers, Lakes, and Streams Act merely recognizes the

concurrent exercise of local powers consistent with its purpose. 615 ILCS 5/18g(g) (West 1998).

Again we note that we deal here not with the application of general grants of authority to two independently created units of local government but, rather, with a legislative purpose establishing a bi-county water improvement agency with certain powers and responsibilities, a county's ordinance authority derived from the powers conferred upon it in the Counties Code, and the permit authority delegated to the Commission by the IDNR.

Even if this controversy involved a conflict between the Commission's authority derived from the Counties Code and defendant's statutory jurisdiction, the Fox Waterway Act's grant of authority is far more specific than the authority granted to the Commission under the Counties Code. General statutory construction provides that a more particular statute should be given effect over a more general enactment of the same body. *Bowes v. City of Chicago*, 3 Ill. 2d 175, 205 (1954).

In *Bowes*, the Revised Cities and Villages Act (Ill. Rev. Stat. 1953, ch. 24, par. 49—11) granted a municipality the authority to construct water purification plants and to reclaim submerged land under any public bodies of water within the jurisdiction. *Bowes*, 3 Ill. 2d at 204. However, the Rivers, Lakes, and Streams Act required a submission of plans and the application for a permit to the state's department of public works and buildings for the construction of a plant. The City of Chicago failed to obtain a permit from the state due to its own authority under the Revised Cities and Villages Act. *Bowes*, 3 Ill. 2d at 204. The court noted that the Rivers, Lakes, and Streams Act was passed in 1911, while the amendment to the Revised Cities and Villages Act occurred in 1949. *Bowes*, 3 Ill. 2d at 205. The court noted that, in addition to its more recent status, the amendment was a more specific provision than section 18 of the Rivers, Lakes, and Streams Act. *Bowes*, 3 Ill. 2d at 205. Accordingly, the court held that the legislature had given specific permission to the city to construct the water filtration plant upon submerged lands within its jurisdiction and that the city, therefore, did not need to obtain a permit from the department of public works and buildings in order to proceed with construction. *Bowes*, 3 Ill. 2d at 205; see also *American Smelting & Refining Co. v. County of Knox*, 60 Ill. 2d 133 (1974) (holding that a county could not rely on its zoning power to determine strip-mining reclamation standards when the Surface-Mined Land Conservation and Reclamation Act (the Reclamation Act) (Ill. Rev. Stat. 1971, ch. 93, pars. 201 through 216) provided detailed and concise provisions addressing the same). Similarly, the Fox Waterway Act was enacted after the general

authority to regulate was granted to plaintiff; it was far more specific in granting defendant the authority to engage in projects within the Commission's jurisdiction than the general grant of authority to regulate provided to the Commission by the Counties Code.

Finally, we have difficulty accepting plaintiff's assertion that it may regulate defendant, which is an entity spanning two counties. In *Metropolitan Sanitary District of Greater Chicago v. City of Des Plaines*, 63 Ill. 2d 256 (1976), the city sought to enjoin the district from constructing a sewage treatment plant without obtaining a permit issued by the city and complying with a city health ordinance. *Metropolitan Sanitary District of Greater Chicago*, 63 Ill. 2d at 257. The district had secured a permit from the IEPA for the construction, operation, and maintenance of the proposed plant. *Metropolitan Sanitary District of Greater Chicago*, 63 Ill. 2d at 258. The district argued that, since it had complied with state permit requirements, it was not necessary for it to do so with the city. *Metropolitan Sanitary District of Greater Chicago*, 63 Ill. 2d at 258. The circuit court denied the district's motion to dismiss, holding that the district must comply with those reasonable provisions of the health ordinance that were not inconsistent with conditions required by the IEPA, and an interlocutory appeal was granted. *Metropolitan Sanitary District of Greater Chicago*, 63 Ill. 2d at 257-58. Our supreme court reversed, noting:

"Our fundamental difficulty is that to permit a regional district to be regulated by a part of that region is incompatible with the purpose for which it was created." *Metropolitan Sanitary District of Greater Chicago*, 63 Ill. 2d at 261.

Therefore, the court held that it was not the intent of the framers that home rule units have the authority to regulate "regional or statewide" environmental situations. *Metropolitan Sanitary District of Greater Chicago*, 63 Ill. 2d at 262. We find this case to be similar to the facts before us.

Like the sanitary district, defendant is a unit of local government created pursuant to statute. Like the sanitary district, defendant is a regional body, encompassing more area than the plaintiff's boundaries. Like the sanitary district, defendant secured a permit from the appropriate state agency, whose geographical jurisdiction and statutory authority exceeded its own and that of the plaintiff. Accordingly, the regulation of defendant's activities by the Commission would be inconsistent with the purpose for which defendant was created. See *Metropolitan Sanitary District of Greater Chicago*, 63 Ill. 2d at 261.

Because, as we have discussed, the specific grant of authority extended to defendant is far more specific than those powers extended to the Commission, and because we find further support for our deci-

sion in the case law, we hold that the status defendant enjoys as an agency created by the state legislature with the specific purpose and authority to engage in activities like the geotube project exempts it from the Commission's permit requirements.

## III. CONCLUSION

For the foregoing reasons, we reverse the trial court's order granting the plaintiff's motion for summary judgment and denying defendant's motion for summary judgment, and we remand the cause with directions that the trial court enter summary judgment for defendant, Fox Waterway Agency.

Reversed and remanded with directions.

BYRNE and CALLUM, JJ., concur.