2022 IL App (1st) 220131-U

FOURTH DIVISION
Order filed: September 8, 2022

No. 1-22-0131

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| BILL WILLIAMS, an Individual, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CH 11896 |
| | ) | |
| LINCOLNWAY COMMUNITY BANK, an Illinois | ) | |
| Banking Institution, | ) | Honorable |
| | ) | Eve M. Reilly, |
| Defendant and Counterplaintiff-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Although a contract between two parties for the sale of a loan was cancelled when the seller returned the buyer's earnest money, genuine issues of material fact regarding the possible formation of a new contract in the parties' subsequent communications should have precluded summary judgment on the issue of the potential contract's existence and enforceability.

¶ 2    Appellant, LincolnWay Community Bank (LincolnWay), appeals a final judgment entered

in favor of appellee Bill Williams in Williams' action for a declaratory judgment concerning the

validity of an assignment agreement purportedly binding Williams to purchase a loan from LincolnWay. Because issues of material fact should have precluded summary judgment, we reverse the court's order and remand this matter for further proceedings.

¶ 3    At issue is LincolnWay's attempt to sell a commercial real estate loan to MMT Services, Inc. (MMT), and MMT's related attempt to assign its interest in the sale to Williams. The transaction began on October 12, 2017, when LincolnWay entered into a Loan Sale Agreement (LSA) with MMT for the sale of the loan. At that same time, MMT made a $25,000 earnest money payment to LincolnWay. The LSA provided for a 10-day due diligence period expiring October 26, with closing scheduled to occur 5 days thereafter on November 2.

¶ 4    Shortly after the close of business on October 26, counsel for MMT emailed counsel for LincolnWay and requested an extension of the due diligence period through October 31. MMT's counsel also stated that, should LincolnWay not agree to the extension, "we are terminating pursuant to the due diligence provision [in the LSA] and all earnest money shall be refunded." Counsel for LincolnWay then emailed the following response:

> "Technically, you missed the 5pm 10/26/17 deadline so we can keep the earnest money. We won't do that and I am going to wire it back to the sender at noon tomorrow 10/27/17 if we don't get a response from you, in writing, prior to then that you are moving forward with the deal per the agreement. We have several other parties interested in buying the note and I don't want to hold them off anymore. The Bank is actually better off keeping the loan, following through with foreclosure, getting the property and selling it for a profit due to the equity we know is there."

MMT's counsel replied by asking LincolnWay to go ahead and process the refund, adding that she would let LincolnWay know by the end of the following day whether MMT wanted to "reinstate the contract." However, shortly after this communication, MMT's principal informed LincolnWay that MMT would be represented by new counsel going forward and requested that new counsel be provided all necessary documents.

¶ 5 On the morning of October 27, LincolnWay's counsel provided MMT's new counsel with the requested documents and stated that LincolnWay would wait until 2:00 p.m. for a response from MMT regarding MMT's intention to move forward with the deal. LincolnWay's counsel stated that, if LincolnWay did not receive such a response, it would return the $25,000 deposit. When the 2:00 p.m. deadline passed without a response from MMT, LincolnWay returned the $25,000 earnest money deposit.

¶ 6 However, that was not the end of the matter. Later in the afternoon of October 27, MMT's new counsel responded to LincolnWay that she had been in a meeting all morning and had just received LincolnWay's counsel's earlier message about the 2:00 p.m. deadline. MMT's counsel stated that she would immediately confer with her client about MMT's intention to proceed and would promptly notify LincolnWay of MMT's decision. Before the end of the day, MMT's counsel indeed informed LincolnWay's counsel that MMT wished to proceed with the deal.

¶ 7 Several days later, on October 31, MMT provided LincolnWay with a proposed assignment agreement under which MMT would assign its interest in the transaction to a third party, Bill Williams. (Under the terms of the LSA, MMT was required to obtain LincolnWay's consent for any such assignment.) At that same time, Williams made a $25,000 earnest money payment to LincolnWay and MMT requested that the November 2 closing date be extended to November 14.

LincolnWay initially rejected the extension request, but its counsel then informed MMT that LincolnWay would agree to an extension on the condition that, among other things, MMT or Williams provided $15,000 of additional non-refundable earnest money and that MMT acknowledged that the due diligence period had expired and the sale agreement was firm. MMT's counsel responded that LincolnWay's terms were acceptable, and over the ensuing days, the three parties all signed and executed the assignment agreement.

¶ 8    On November 13, one day before the scheduled closing, MMT requested that the closing be pushed back to November 17. LincolnWay agreed to the extension on the condition that either MMT or Williams provide an additional $10,000 in non-refundable earnest money. On November 16, MMT's counsel notified LincolnWay that there was a chance that the buyers would not be able to obtain financing by the time of closing, and indeed MMT and Williams were ultimately unable to complete the purchase and the deal dissolved. LincolnWay deemed the $50,000 in earnest money to be forfeited, and it eventually sold the loan to another party.

¶ 9    Two weeks after the would-be closing date, Williams' counsel served LincolnWay with a letter demanding return of the earnest money. Williams asserted that the assignment agreement purportedly obligating him to complete the sale was ineffective and unenforceable because the parties did not agree to the assignment until after LincolnWay had terminated the LSA on October 30 when it returned MMT's initial $25,000 earnest money deposit. LincolnWay disagreed and refused to return Williams' earnest money.

¶ 10    In September 2018, Williams filed a three-count declaratory judgment action against LincolnWay seeking three separate declarations: (1) that Williams was not a party to the LSA because LincolnWay had terminated the LSA prior to the execution of the assignment agreement;

(2) that the agreement was void because MMT had no interest in the transaction to assign to Williams at the time that the parties executed the assignment agreement; and (3) that, under the terms of the LSA requiring that all amendments be made in a writing signed by the parties, any attempted amendments of the LSA through emails between counsel were ineffective. Through these declarations, Williams ultimately sought the return of the $50,000 in earnest money that LincolnWay had kept after the deal fell through. LincolnWay answered the complaint and added a counterclaim for a contrary declaration that the assignment agreement was valid and enforceable, entitling it to retain Williams' earnest money.

¶ 11    LincolnWay eventually filed a motion for summary judgment on Williams' complaint and on its counterclaim. Following a response from Williams and a reply from LincolnWay, the circuit court denied the motion in part and granted the motion in part. The court found that genuine issues of material fact precluded summary judgment on counts one and two of Williams' complaint, but the court found that no actual controversy existed as to Williams' third count concerning the amendment of the LSA, to which Williams was not a party. Therefore, the court granted summary judgment in favor of LincolnWay on count three of the complaint. In a separate order, and for the same reasons, the court denied LincolnWay's motion for summary judgment on its counterclaim.

¶ 12    Several months later, LincolnWay filed a second motion for summary judgment, which was followed by a response from Williams and a reply from LincolnWay. In this second motion, LincolnWay argued that the events surrounding the assignment of MMT's interest in the action to Williams demonstrated that a novation had taken place, with all three parties assenting to a new three-party agreement replacing the original two-party LSA. However, the court found that the LSA had been terminated by LincolnWay's return of MMT's first earnest money deposit and that,

as a consequence, a novation could not have taken place because no prior agreement existed to be replaced. As a result, the court denied LincolnWay's second motion for summary judgment.

¶ 13     Williams then filed his own motion for summary judgment, to which LincolnWay responded and countered with its third such motion. The circuit ruled in favor of Williams on both motions, finding that the assignment agreement was void and unenforceable because LincolnWay had terminated the LSA and MMT did not have an interest to assign at the time that it entered into the assignment agreement. Therefore, the court granted Williams' motion, denied LincolnWay's motion, and entered judgment in favor of Williams on counts one and two of Williams' complaint and on LincolnWay's counterclaim. LincolnWay now appeals the court's ruling.

¶ 14     A motion for summary judgment may be granted where the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). When the parties file cross-motions for summary judgment, "only a question of law is raised, and our decision is based upon the record as a matter of law." *County of Lake ex rel. Lake County Stormwater Management Comm'n v. Fox Waterway Agency*, 326 Ill. App. 3d 100, 104 (2001) (citing *American Family Mutual Insurance Co. v. Chiczewski,* 298 Ill. App. 3d 1092, 1094 (1998)). Accordingly, we review an order granting summary judgment *de novo*. *Unique Insurance Co. v. Tate*, 2022 IL App (1st) 210491, ¶ 15.

¶ 15     LincolnWay raises two arguments concerning the circuit court's determination that no binding agreement entitling LincolnWay to retain Williams' earnest money existed. First, LincolnWay contends that the circuit court erred in finding that its return of MMT's initial $25,000 earnest money payment amounted to a termination of the LSA. Second, LincolnWay argues that,

even if the LSA had been terminated, the parties created a new contract when it approved the proposed assignment agreement. On the first of these arguments, the record evidence supports the circuit court's conclusion that LincolnWay terminated the LSA when it returned MMT's initial earnest money payment. However, we see merit to LincolnWay's second argument that the parties revived the agreement after the LSA's initial termination.

¶ 16    Addressing LincolnWay's alleged termination of the LSA, when we look at the circumstances surrounding LincolnWay's return of MMT's earnest money, and in particular the emails that the parties' attorneys exchanged around that time, it is clear that LincolnWay intended to terminate the parties' agreement when it returned the initial earnest money payment. The exhibits attached to the parties' motions for summary judgment show that on October 26 and 27 the sale agreement was on the verge of falling through. Shortly after the 5:00 p.m. deadline passed on October 26, MMT requested that LincolnWay extend the due diligence period and its counsel stated that, if LincolnWay refused, MMT would be "terminating pursuant to the due diligence provision [in the LSA] and all earnest money shall be refunded." LincolnWay's counsel responded that MMT had already missed the deadline and that LincolnWay would give MMT until noon on the October 27 to provide final word on whether MMT wished to continue with the deal, failing which LincolnWay would return the deposit. Notably, LincolnWay's counsel added that LincolnWay had several other parties interested in purchasing the loan and did not want to keep those other parties waiting. LincolnWay's counsel also commented that it would be better off keeping the loan and foreclosing on the property. MMT's counsel replied by asking LincolnWay to process the refund, adding that she would let LincolnWay know by the end of the following day whether MMT wanted to "reinstate the contract."

¶ 17    When MMT's principal notified LincolnWay the following day that MMT would from that point be represented by new counsel, LincolnWay pushed back the deadline from noon to 2:00 p.m., with the same admonition that LincolnWay would return the deposit if it did not receive a response from MMT by that time. When the 2:00 p.m. deadline came and went without word from MMT, LincolnWay returned the deposit.

¶ 18    Within the context of the parties' communications, and particularly in light of LincolnWay's stated interest in exploring other waiting buyers, we see no genuine dispute as to the significance of LincolnWay's return of the initial $25,000 earnest money deposit. LincolnWay gave MMT a relatively short time period in which to respond, and its counsel explained that LincolnWay did not want to continue holding off its other willing buyers. It seems evident that when MMT again missed the deadline to notify LincolnWay of its intentions, LincolnWay had no desire to wait any longer and was ready to terminate the deal and move on. Indeed, MMT appeared to see termination of the contract as the consequence of its inaction, as evidenced by MMT's counsel's comment on the evening of October 26 that MMT wanted LincolnWay to process the refund while MMT decided whether or not it wished to "reinstate" the contract, an event that would only be required if the contract had first been terminated. Accordingly, we see no error in the circuit court's conclusion that LincolnWay terminated the LSA when it returned MMT's initial earnest money payment.

¶ 19    However, LincolnWay also argues that, even if the LSA was terminated on October 27, the parties formed a new contract on November 1 when MMT accepted LincolnWay's offer to resume the parties' transaction and LincolnWay approved the assignment of MMT's interest in the deal to Williams. Although LincolnWay raised this argument in the summary judgment

proceedings below, the circuit court did not address it in its order disposing of the parties' motions. Our review is *de novo*, and for the reasons which follow, we find that there exist genuine issues of material fact regarding the possible formation of a new contract that preclude the entry of summary judgment. See *Pielet v. Pielet*, 2012 IL 112064, ¶ 28 ("[T]he mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment.").

¶ 20    "A contract, to be valid, must contain offer, acceptance, and consideration; to be enforceable, the agreement must also be sufficiently definite so that its terms are reasonably certain and able to be determined." *Halloran v. Dickerson*, 287 Ill. App. 3d 857, 867–68 (1997) (citing *Ogle v. Hotto,* 273 Ill. App. 3d 313, 319 (1995)). "The existence of a contract, its terms, and the parties' intent are questions of fact to be determined by a trier of fact." *Arbogast v. Chicago Cubs Baseball Club, LLC*, 2021 IL App (1st) 210526, ¶ 19 (citing *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 81). "Only when no factual dispute exists does the issue of a contract's existence become a question of law for the court." *Id.* (citing *Hany v. General Electric Co.*, 221 Ill. App. 3d 390, 397 (1991)). In this case, we see no genuine dispute regarding the potential contract's existence, which is evident in the emails between the parties' attorneys. However, there do appear to be genuine issues regarding the contract's terms and the parties' intent.

¶ 21    Although a potential contract in this case would require reference to several emails between the parties, as well as other documents mentioned in those emails, Illinois courts have held that "[u]nder proper circumstances the parties' correspondence may constitute a contract, even if it is necessary to refer to several documents to establish its terms." *Harris v. American General*

*Finance Corp.*, 54 Ill. App. 3d 835, 838–39 (1977). Indeed, "[a]s a general rule, a contract need not be contained in a single writing; it may be collected from several different writings which do not conflict with each other and which, when connected, show the parties, subject matter, terms, and consideration." *O'Brien v. Kawazoye*, 27 Ill. App. 3d 810, 816 (1975).

¶ 22    When we look at the parties' emails following LincolnWay's termination of the initial LSA, we see that on October 31 an attorney representing both MMT and Williams made an offer to LincolnWay when she presented LincolnWay with the proposed assignment agreement between MMT and Williams, which in turn referenced the LSA as the subject of the assignment. In this same email, counsel for MMT and Williams requested an extension of the closing date to November 14, and she informed LincolnWay that Williams had initiated the transfer of the $25,000 earnest money deposit required by the LSA. LincolnWay declined this offer in its response, insisting that the deal close on November 2.

¶ 23    Following some insignificant intervening correspondence, LincolnWay returned with an offer of its own. In a November 1 email, LincolnWay's counsel informed MMT and Williams that LincolnWay was willing to extend the closing date to November 14 on several conditions, among which were that MMT or Williams make an additional non-refundable earnest money deposit of $15,000 and that MMT and Williams acknowledge that the due diligence period had closed and "the Agreement is now firm." This email then concluded with the following statement: "In the event that these conditions are acceptable to your client, please respond by e-mail and acknowledge that the above conditions and your acceptance operates as an Amendment to the Agreement dated October 12, 2017 by and between LincolnWay Community Bank and MMT Services, Inc."

Counsel for MMT and Williams responded, "Those terms are acceptable \*\*\*," and the three parties then signed the assignment agreement.

¶ 24    From this evidence, we see some merit to LincolnWay's argument that the parties may have formed a new contract for the sale of the loan at issue and the assignment of MMT's interest in that deal to Williams, as there appears to have been an offer from LincolnWay to reenter the deal and an acceptance from MMT, followed by LincolnWay's approval of the assignment to Williams. It is true that the offer from LincolnWay stated that an acceptance would operate as an "amendment" of the original LSA, even though the LSA had been terminated by that point and, therefore, could not have been amended. But that label is not controlling as to the viability of the offer. The cardinal rule of contract law is that it is the intent of the parties that matters (*Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 308 (2008)), and it seems entirely reasonable to conclude that, if they had been operating with the knowledge that the LSA had been cancelled, the parties would have instead viewed this "amendment" as essentially a reinstatement. Indeed, the effect going forward would be the same, and it is difficult to see the intent as anything other than to proceed with the deal as originally conceived in the LSA, regardless of the label that is placed on it. Therefore, we do not see the use of "amendment" as preclusive of the existence of a contract, and the general intent to revive the deal seems clear.

¶ 25    However, while the basic intent to reenter into an agreement for the sale of the loan may be clear, the precise terms of the potential contract are less well-defined. As we noted earlier, for a contract to be valid it must be "sufficiently definite so that its terms are reasonably certain and able to be determined." *Halloran*, 287 Ill. App. 3d at 867–68; see also *Acadamic Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 29 (1991) ("A contract 'is sufficiently definite and certain

to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do.' " (quoting *Morey v. Hoffman*, 12 Ill. 2d 125 (1957))). In contracts for the sale of a loan or mortgage, courts have found the essential terms to be "(1) the parties involved, (2) a description of the mortgages to be sold, (3) the price of the mortgages, and (4) the timing of sale." *Truman Capital Advisors LP v. Nationstar Mortgage, LLC*, 13 CIV. 5945 NRB, 2014 WL 4188090, at *6 (S.D.N.Y. Aug. 25, 2014).

¶ 26    In this case, the offer and acceptance that might have formed a new contract did not explicitly state all of the terms of the potential new agreement, but the emails referenced the LSA and the assignment agreement, and all of the essential terms are present either in the emails or the in those referenced documents. Specifically, the writings together show that LincolnWay is the seller, MMT is the buyer and assignor, and Williams is the buyer's assignee. Additionally, the LSA provides a specific description of the loan that is being sold, as well as the price that the buyer is to pay for the loan and the amount of the initial earnest money deposit. And from the emails we are able to determine the timing of the sale and the amount of the additional earnest money deposits. Therefore, one could conclude that all of the necessary elements for a contract for the sale of a loan and the assignment of the buyer's interest were present.

¶ 27    When we look at this evidence, it appears possible that the parties did indeed create a new contract with the intention of reinstating the LSA in full and substituting the new closing date and earnest-money terms that they had agreed to in the emails for the conflicting terms contained in the original LSA. However, given the factual nature of such an inquiry into the intent of the parties, the summary judgment entered in favor of Williams must be reversed and the matter remanded to

the circuit court for further proceedings. See *Arbogast*, 2021 IL App (1st) 210526, ¶ 19 (citing *Pepper Construction Co.*, 2016 IL App (1st) 142754, ¶ 81) ("The existence of a contract, its terms, and the parties' intent are questions of fact to be determined by a trier of fact.").

¶ 28　　Accordingly, we reverse the order granting summary judgment in favor of Williams and against LincolnWay on counts one and two of Williams' complaint and on LincolnWay's counterclaim and remand for further proceedings consistent with this order.

¶ 29　　Reversed and remanded.